CASE 57.—PERSONAL INJURY ACTION BY ADDIE HAM-
MOCK AGAINST THE UNIVERSITY OF LOUIS-
VILLE.—December 17.

# University of Louisville v. Hammock

Appeal from Jefferson Circuit Court; Common
Pleas Branch; Third Division.

MATT O'DOHERTY, Judge.

Judgment    for    plaintiff,    defendant    appeals—
Affirmed.

1.  Abatement—Misnomer of Defendant—Necessity to Pleading in
    Abatement.—A corporation, when sued under a wrong name,
    must by answer or plea in abatement set forth the mis-
    nomer and disclose its true name, so that plaintiff may
    amend, and it can not object to the misnomer for the first
    time on appeal.
2.  Appeal—Question not Raised in Trial Court—Misnomer of
    Defendant.—Where, in an action against a corporation sued
    under a wrong name, it appeared that it owned and con-
    trolled the hospital in which plaintiff sustained the injuries
    complained of, and it failed to object in the court below to
    the name given it or to disclose its true name, but made a
    defense on the merits, it could not complain on appeal that
    judgment went against it in the name by which it was sued.
3.  Hospital—Injuries to Patients—Negligence—Evidence.—In an
    action by a patient in a hospital assaulted by a demented
    patient therein, evidence held to show negligence on the
    part of the employes of the hospital in permitting the de-
    mented patient to escape from his room and assault the
    patient, authorizing a recovery.
4.  Damages—Personal Injuries—Excessive Damages.—A patient
    in a hospital was assaulted by a demented patient, and in-
    jured. Her illness was immediately and greatly aggravated
    in consequence of the assault, and her health was, to some

extent, permanently impaired thereby. Held, That a verdict of $1,000 was not excessive.

5. Charities—Hospitals—Injuries to Patient—Liability.—Where a hospital is maintained as a charitable institution, either by the government, or by a corporation, or by an individual, there is no liability for injuries to a patient therein in consequence of torts of the employes in charge thereof.

6. Hospitals—Injuries to Patient—Liability.—A hospital maintained by a university as an adjunct to its school of medicine for the advantage of its students and professors, and conducted for profit by requiring compensation from patients able to pay, though receiving free of charge patients unable to pay, is not a charitable institution, and the corporation is liable to a pay patient for the torts of its agents and employes.

BURNETT & BURNETT for appellants.

POINTS AND AUTHORITIES.

Hospitals.—A private, or quasi private charity is not liable for the negligence of its employes, or for its own negligence in selecting employes. (Adams v. University Hospital, Central Journal No. 64, p. 214; Parks v. University, 218, Ill., 381; Fire Ins. Patrol v. Boyd, 120 Pa., 624; Williamson v. Louisville School of Reform, 95 Ky., 251; Perry v. House of Refuge, 63 Md., 20; Marie v. Eastern Hospital, 97 Va., 507; Downes v. Harper Hospital, 101 Mich., 555; McDonald v. Hospital, 120 Mass., 432; Benton v. Trustees, 140 Mass., 13.)

Negligence will not be presumed, but must be proven.

Corporation must be sued in its corporate name. (Act approved February 7th, 1846.)

BENNETT H. YOUNG for appellee.

(No brief for appellee.)

OPINION OF THE COURT BY JUDGE SETTLE— Affirming.

The appellee, Addie Hammock, recovered a verdict and judgment for $1,000 damages in the court below against the appellant, University of Louisville, for

injuries to her person alleged to have been received while a patient in its infirmary at the hands of a demented or partially demented patient of the same institution, who, it was charged, had negligently been permitted to escape from his room and keeper, wander into that of appellee, and assault her and maltreat her.

Failing to obtain in the lower court a new trial, appellant asks of this court a reversal of the judgment in question upon three grounds: (1) That it was not sued in its true corporate name; (2) that no negligence was shown, and that the verdict returned by the jury was contrary to law and flagrantly against the evidence; (3) that appellant is a charitable institution and by reason thereof exempt from liability for the torts of its agents or servants.

As to the first proposition, little need be said. Obviously appellant was sued and judgment recovered against it as the ''University of Louisville,'' when its true corporate name was and is the ''President and Trustees of the University of Louisville,'' but the misnomer cannot be objected to for the first time on appeal. It should have been made in the circuit court by answer or affidavit in the nature of a plea in abatement, setting forth the misnomer and disclosing the true name of the defendant. When this is done, the plaintiff may amend his petition, and then proceed against the defendant in his true name. L. & N. R. R. Co. v. Hall, 12 Bush, 131; Teets v. Snider Heading Mfg. Co., 120 Ky. 653, 87 S. W. 803, 27 Ky. Law Rep. 1061; Pike, Morgan & Co. v. Wathen, 78 S. W. 137, 25 Ky. Law Rep. 1264; 14 Ency. of Plead. & Prac. 295. The record shows that the corporation sued was the same corporation that owned and controlled the hospital in which appellee sus-

tained her injuries; and, as it failed to object in the circuit court to the improper corporate name given it or to disclose its true corporate name and there made defense on the merits, it is estopped to complain that judgment went against it in the name by which it was sued.

In our opinion the second contention of appellant is equally without merit.  There was testimony conducing to prove negligence on the part of appellant and its employes in charge of the hospital, and that such negligence was the proximate cause of appellee's injuries.  The facts, as disclosed by the evidence, were, in substance, that appellee, a married woman, who was laboring under a serious illness, and greatly prostrated thereby, had placed herself in the hospital at the instance of her physician.  She was a pay patient, and had the right to expect of appellant and its employes in charge of the institution careful and skillful nursing and treatment such as her case particularly required.  Indeed, the sick leave their homes and enter hospitals because of the superior treatment there promised them.  On the day after appellee entered the hospital, its manager received as an inmate thereof a patient known as Dr. Meador, who was at the time afflicted with delirium tremens, a disease resulting from the excessive, habitual use of intoxicating liquors.  This patient was placed in a room of the hospital on the floor beneath that occupied by appellee.  At 10 p. m. of the same day Meador became so uncontrollable that he overawed the single female nurse in whose charge he had been left, and, escaping from his room, passed through the hall of the building and upstairs, talking in a loud voice and using profane language. Upon reaching the upper floor, he entered the room

occupied by appellee, and approaching the bed where she was lying, seized her by the arms, struck and bruised her person, and dragged her from the bed, to her great fright and injury. Meador was finally captured, removed from the room, and securely tied by two nurses with the assistance of a negro porter, and a little later was returned to and confined in his own room. Whatever may have been his condition at other times, Meador, according to the evidence, was manifestly violent, uncontrollable, and delirious, if not actually crazy, when he escaped from his room and entered that of appellee and assaulted her. He was a large man of more than 200 pounds weight and great physical strength. Howard, the negro porter, admitted that he was physically unable to cope with him without assistance. The fact that physicians had disagnosed Meador's case as delirium tremens before he entered the hospital, and that such was his disease when received there, was known to one of the physicians in charge of the hospital, to its head nurse, Miss Parsons, and two other nurses of the institution, one of whom was Miss Zeigler, from whose custody he escaped just before appellee was assaulted by him. One of the nurses admitted that she was directed by Meador's physician not to make an entry on the hospital chart of his true malady, and this direction she obeyed, thereby concealing the fact that the patient was afflicted with delirium tremens. Whether Meador manifested a disposition to become violent between the time of his admission to the hospital and the time of his breaking away from the nurse does not definitely appear from the evidence, but his disease being known, as it was, to a physician of the institution, its head nurse, and two of her assistants, when Meador was received,

and their further knowledge, especially that of the physician, that a person so afflicted might reasonably be expected to become violent, uncontrollable, and dangerous at any time, ought to have induced them to take such reasonable precautions with reference to his control or confinement as would have prevented his inflicting injury upon other inmates of the hospital. Yet this powerful man, crazed from the excessive use of spirituous liquors, and by reason of that fact uncontrollable and dangerous, was left in an insecure apartment and in charge of a single woman, who was utterly powerless to restrain him. Under these circumstances, it would seem to a reasonable mind that what happened was to have been expected, if not inevitable. There was therefore some evidence of negligence to go to the jury, and, in the light of that evidence, we do not feel called upon to declare that the verdict finding appellant guilty of negligence was unauthorized. It cannot be denied that the attack made by Meador upon appellee was disastrous to her. If we accept her version of the matter, and it is not materially contradicted, the only wonder is that, in her physically weak and nervous condition, she was not frightened to death by the cries and violence of the madman. Much of the testimony went to show, not only that her illness was immediately and greatly aggravated, but that her health was, to some extent at least, permanently impaired thereby. In view of these facts, the amount recovered cannot be regarded excessive.

Appellant's third contention, that it is a charitable institution and by reason thereof exempt from liability for the negligence of its servants, is in conflict with more than one decision of this court. The hospital in which appellee received the injuries com-

plained of is an adjunct of the appellant's school of medicine, known as the "University of Louisville," and is maintained principally because of the advantages it affords to the students and professors of that institution. It is, however, also conducted for compensation and profit. In the main, patients received and treated at the hospital are required to compensate those in charge of it for the services rendered. This is certainly true, according to the evidence, as to patients able to pay. It is true some patients unable to pay are received and treated free of charge, but this does not show that appellant conducted a purely public charity; and, to escape liability for the wrongful acts or negligence of its servants, it should have proved that such was the character of the hospital and the use to which it is devoted. The hospital is not maintained by taxation, or controlled by the State, or city of Louisville. Eleemosynary institutions and other institutions of like character devoted to purely charitable uses, whether maintained by government, corporations, or individuals, are exempt from such liability as was here imposed upon appellant, on the ground that they are mere instrumentalities brought into being to aid in the performance of governmental or public duty; but such is not the character of the hospital maintained by appellant. Hence its attempt to escape liability for the negligence of its agents resulting in appellee's injuries was properly prevented by the trial court. The question under consideration was decided adversely to the contention here urged by appellant, in the case of Gray Street Infirmary v. City of Louisville, 65 S. W. 1, 23 Ky. Law Rep. 1274, 55 L. R. A. 270. In that case the Gray Street Infirmary sought to escape taxation for municipal purposes on the ground that it was an

institution of public charity, and therefore not subject to taxation. But, in rejecting that contention, this court said: "Dr. Grant testifies that the institution would not have been established, except that the incorporators hoped to receive pecuniary advantage from it, either directly or through their connection with the college. We have no doubt from the testimony that the professors in the medical college do a great deal of charitable work in the infirmary; yet the real purpose in establishing the infirmary was to make their college more attractive to students, and to induce attendance by reason of the instruction and clinical experience received in the infirmary. And in this way to increase the profits of the professors operating the college. Certainly such an institution cannot be exempted from taxation on the ground that it is purely an institution of public charity." The same view of the law is expressed in the later case of Wathen v. City of Louisville, 85 S. W. 1195, 27 Ky. Law Rep. 635, in the opinion of which it is said: "It is manifest from the evidence that the hospital is maintained because it is necessary to the successful conduct of the school of medicine. Without the clinical instruction and the operations by the professors in the presence of the students, the school could not be maintained with success. The hospital is an adjunct or a part of the medical school. Whatever gain may result from the operation of the medical school goes to the owners of the property. While the evidence shows that a great deal of charity work is performed in the treatment of patients and in dispensing medicines, still the institution is conducted for profit. As it is operated for gain, no part of it is exempt from taxation under section 170 of the Constitution. This conclusion is supported by Gray

Street Infirmary v. City of Louisville, 65 S. W. 1, 23 Ky. Law Rep. 1274, 55 L. R. A. 270.'' We think these two cases control the case at bar, and hence we adhere to the doctrine therein expressed. If, as must be conceded, appellant's hospital is subject to taxation because it is not a charitable institution, it is for the same reason responsible for the torts of its agents and employes. No criticism is made of the instructions, and they were clearly correct, unless the appellant had shown itself entitled to a peremptory instruction, on the ground of the exemption from liability claimed; which we have said it could not do.

Finding no error in the rulings of the lower court, the judgment is affirmed.