## CARVER CHIROPRACTIC COLLEGE v. ARMSTRONG.

No. 14983—Opinion Filed June 10, 1924.

Rehearing Denied Oct. 7, 1924.

**1. Trial—Demurrer to Evidence—Consideration.**

In passing upon a demurrer to the evidence the court does not weigh the evidence. The demurrer admits every fact which the evidence in the slightest degree tends to

r⁻ⁿ ve. and all inferences and conc⁻usions ⁳⁻ at may be reasonably and logically drawn f⁳⁻ m the same. and where there is any conflict in plaintiff's evidence that would make any part of it unfavorable to plaintiff, or sustain the defense, the court in passing upon such demurrer should consider such e idence withdrawn.

**2. Appeal and Error—Harmless Error—Inaccurate Instructions.**

Whether in a given case, there should be a reversal for error in giving an instruction depends as much upon the evidence before the jury to which the instruction might be applied, as upon the abstract accuracy of the language of the instruction, and so. if it is apparent that the language of the instruction, though inaccurate, yet when applied to the evidence before the jury, it could not have misled the jury to believe their duty was different from what it actually was, inaccuracy can afford no reason for reversal.

**3. Appeal and Error—Questions of Fact—Verdict.**

Where a cause has been tried to a jury, and there is a state of facts reasonably deducible from the evidence which, under any theory of law applicable to the issues and facts. will authorize the judgment, it will not be disturbed.

**4. Physicians and Surgeons—Liability of Chiropractic College for Negligent Treatment by Student in Clinic.**

A corporation created for the purpose of maintaining and operating a school or college for gain or profit in which is taught the science of chiropractics, and which maintains a clinic in connection with the college, wherein patients are treated by under-graduate students, or interns of the institution, for a nominal charge, is liable for an injury sustained by a patient while being treated in the clinic by a student who has been assigned by the authorities in charge of the college, to administer the treatment, where the injury complained of is the result of negligence, carelessness, or lack of ordinary skill on the part of the student administering the treatment.

(Syllabus by Jones, C.)

Commissioners' Opinion. Division No. 3.

Error from District Court, Oklahoma County; James I. Phelps, Judge.

Action by Mrs. A. J. Armstrong against Carver Chiropractic College. Judgment for plaintiff, and defendant brings error. Affirmed.

Horton & Horton and Geo. S. Evans. for plaintiff in error.

Robert W. Maupin and John A. Maupin, for defendant in error.

Opinion by JONES C. This action was instituted in the district court of Oklahoma county, Okla., by plaintiff, the appellee herein, against the defendant, appellant herein. to recover damages in the sum of $10,141. The plaintiff alleges that on or about the 5th day of May, 1922, that she was sick, and entered the Carver Chiropractic College defendant, for the purpose of treatment: that she had been advised that the college maintained a clinic where patients might receive treatment for a nominal sum; and that when she applied at said college to one of the physicians, or practitioners in charge. she was sent to the clinic, and that a nominal charge of $3 was made for 20 treatments or relatings, and that she was placed in charge of Dr. Avery, who was a student in said college and that said Avery in administering his treatment placed the patient herein, upon a table, prone upon her face, and placed his hands upon the middle part of plaintiff's back, approximately about the eighth or ninth ribs. and giving his hands a push downward, reinforced by the weight of his body. thereby imparting such force that plaintiff's body was pushed down and against said table, whereby plaintiff's diaphragm was forced against the edge of said adjustment table in such a manner and force as to cause and produce a fracture of the eighth and ninth ribs, and also caused the cartilages which connect and suppoort the ribs to the sternum, or breast bone. to be torn loose and dislocated: that the muscles and flesh of the right breast of the plaintiff's body were bruised and torn, thereby causing extreme pain and permanent injury to this plaintiff.

The plaintiff further alleges that the padding, or unholstering, on. said adjustment table was torn and partly removed. and that said table was in a dilapidated condition and wholly unfit for the use for which it was intended, and that by reason of such condition the injuries of the plaintiff were aggravated. Plaintiff alleges that she was a practical nurse and was capable of making the sum of $4 per day in her profession, that she has incurred great expense, and also asks for $5,000 punitive damages, making a total of $10 141 damages, for which she prays judgment. To which petition the defendant filed a general denial, and specifically denied that the plaintiff sustained any injuries as alleged, and denied that the operating table was in a dilapidated condition.

The cause was tried to a jury and resulted in a judgment in favor of the plaintiff for $1,000; motion for a new trial was duly filed and overruled and judgment rendered by the court in accordance with the

verdict of the jury, from which order and judgment of the court the appellant appeals and sets forth numerous assignments of error. First, it contends that the trial court erred in overruling appellant's demurrer to the evidence, and takes the position that there was no liability on the part of the appellant for the injury complained of, because of the fact that she was being treated in the clinic and for which no charge was made, except the nominal fee of $3, and cites the case of Powers v. Massachusetts Homeopathic Hospital, 109 Fed. 294, as an authority in support of this contention but from a careful examination of that case, and many others, we find that the rule announced applies to charitable institutions which are governed by different rules of law entirely from private hospitals and colleges created and incorporated for profit and gain. However, there is some conflict of authority as to the liability of charitable institutions. The weight of authorities and, we think, the better rule as to institutions created for charitable purposes alone, where the parties in charge use due care in the selection of surgeons, nurses, servants, and other employes engaged to administer treatment for the ailments and maladies of the human body, is that they are exempt from liability for damages sustained by patients entering such institution or hospital, and receiving the charity of the institution; and the authorities cited are not controlling in this character of cases. We think no error was committed by the court in overruling the demurrer to the evidence.

The second assignment of error complained of is that the court was in error in admitting incompetent and prejudicial evidence over the objections of the appellant. and the contention of appellant is based upon the theory that the petition of plaintiff contained no allegations which would justify proof of loss of time, but from an examination of the petition, we find that plaintiff alleged that she was capable of earning $4 per day, and was earning such amount just prior to the time she entered the college for treatment. She specifically set forth the date the alleged injury was received, and further alleges that she has been unable to earn any money since the date of her injury, and that she has been compelled to give up her profession as a trained nurse, which we think amply sufficient to authorize the introduction of evidence as to this element of damage.

The third assignment of error urged by the appellant is to the effect that the court was in error in giving certain instructions to the jury, and especially instruction No. 4, which is as follows:

"You are further instructed that if you find and believe from a. preponderance of the evidence in this case that on or about the 5th day of May, 1911, the defendant attempted to treat plaintiff and that through the negligence and carelessness of the agents, servants or operators of defendant, plaintiff was injured and damaged by being placed upon a dilapidated and unfit table or by being roughly handled by said operators, then plaintiff would be entitled, subject to the rules laid down in the other instructions given you herewith, to recover such sum or amount as you may find that she has been damaged, not exceeding the sum of $10,141.00, the amount sued for; however, in this connection, you are further instructed that if you find and believe from the evidence that the defendant was operating a clinic where patients were treated by students for a nominal fee, then you are instructed that if plaintiff knew these facts and went there for such treatment, under the law she would not have a right to expect the highest degree of skill, she would be entitled, however, to the highest degree of care and skill furnished by students at such clinic, but if she received the highest degree of care and skill, considering the fact that the operators in said institution were mere students, then she could not be heard to complain that she received poorer service than she might have received from regular practicing chiropractors. In other words, gentlemen, if she went to the clinic, knowing that she would be treated by mere students, the law would not furnish her the same protection that she would be furnished if she went to a regular practitioner; the law would, however, furnish her protection against negligence on the part of said students providing it is shown that the character of treatment she received is not such treatment as is usually furnished at such clinics by said students; and if you find from a preponderance of the evidence that she was injured by the negligence of said students and that such treatment was such treatment as is ordinarily furnished at clinics, then she would not be entitled to recover but if she did not receive the care and skill that such clinics ordinarily furnished and she was thus injured, then she would be entitled to recover."

And this, we think, is the most material contention made, and contains the issue decisive of the rights of the parties in this controversy. The principal contention of the appellant is that there is no liability in this case for the reason that the plaintiff was being treated in the clinic, and by a student of the college, and that she cannot recover for any negligence or lack of skill on the part of the student, having entered the clinic with full knowledge that she was

to be treated by a student and for a nominal fee. In the instruction complained of, we find the following language:

"However, in this connection, you are further instructed that if you find and believe from the evidence that the defendant was operating a clinic where patients were treated by students for a nominal fee, then you are instructed that if plaintiff knew these facts and went there for such treatment, under the law she would not have a right to expect the highest degree of skill."

This, we think is a correct application of the law, and is the most favorable construction that could be given the law as applied to the appellant.

The appellant offered the following instruction, which was refused:

"Gentlemen of the jury, in this case you are instructed that if you find and believe from the evidence that the plaintiff was treated in the clinic of the defendant corporation by a student and she knew that she was being so treated and you further find and believe from the evidence that the injury, if any she received, was occasioned by the unskillful handling of said students, then in that event she would not be entitled to recover"

—which clearly sets forth the contention of the appellant, but we cannot agree with counsel that it is the law of this case. It is the law, as we understand it, which is applicable to charitable institutions, and if you should add to the instruction as requested the clause or language universally used:

"If due care had been used by the persons in control of the institution in the selection of their servants, employes," etc.

—it would be a correct instruction in a case where you were dealing with a purely charitable institution. In 5 R. C. L. p. 375, art. 121, we find this language:

"The rule is well settled that a person who receives an injury from acts of the servants of a charitable corporation, at a time when he is accepting the benefits of the charity, cannot recover for such injury, provided the corporation used due care in selecting its servants."

This, we think, very correctly states the rule as to charitable institutions, and while there are some authorities which go to the extent of entirely exempting charitable institutions maintained by contributions from the public, upon the theory that funds contributed to a charitable institution become trust funds in the hands of the officers of the corporation for charitable purposes and cannot be used in the payment of damages, but we think the better rule and the rule followed by the greater weight of author-

ities is expressed in article 124, 5 R. C. L.:

"The donors of property for charitable purposes are not ignorant of this fact, and are presumed to have given the trust property knowing that it might be required for the liquidation of claims in tort, as well as for claims in contract, incurred in carrying out the purposes of the corporation."

The same rule is also applied to strictly public institutions created and controlled by the state or its subdivisions as will be seen from an examination of 13 R. C. L., p. 944, art. 8, and in the following articles, 9, 10, 11, and 12. Article 13 of the same authority sets forth the rule as applied to private hospitals and sanatoriums, and is as follows:

"Institutions of a strictly private character, by which is meant hospitals or asylums conducted purely for gain and performing no charity, as distinguished from private eleemosynary institutions, are liable to patients as well as to strangers for the negligence of their servants. The degree of care exacted of them toward their patients is said to be such reasonable care and attention for their safety as their mental and physical condition if known may require.
* * *

"The rule of liability applicable in these cases has been applied to a hospital conducted as an adjunct of a school of medicine accepting both pay and charity patients"

—citing University of Louisville v. Hammock, 127 Ky. 564, 106 S. W. 219, 14 L. R. A. (N. S.) 784, which is one of the leading cases on this subject and sustains the author of R. C. L. The defendant in this case is not a hospital, but we think the rule quoted is very applicable and sheds light upon the proper rule to be followed in this case

Defendant in this case is a college and operates a clinic in connection with its school, wherein they teach a science concerning the treatment of physical ailments and maladies, and while we have found no authority which places chiropractics in the same class of other well-known and reputable schools of medicine and surgery, it is nevertheless a well-known and recognized school which teaches a science or method of treatment of physical ailments and bodily derangements and we think should be governed by the same rules of law as other sciences and professions taught and maintained for similar purposes. The practice of this science should be governed by the same rules of law as the homeopath and the allopath and other schools of medicine, and in dealing with the defendant, appellant herein, in this light a more strict and

rigid rule is applicable possibly than in dealing with hospitals and sanatoriums; at least we think in passing upon the question here involved we should take into consideration the relationship of patient and physician, and from an examination of 21 R. C. L p. 377, art. 23, we find a discussion of the obligation of the physician to his patient:

"The treatment of the sick is a question of so much concern to the state that special rules of law are made to govern physicians. When a physician has undertaken the care of a patient the law will hold him to an exercise of an amount of skill common to his profession. without which he should not have taken the case, and a degree of care commensurate with his position. Once a physician undertakes the care of a case the law imposes on him the obligation of due care."

And in article 24 of the same authority, we find this language:

"On the relation of physician and patient, there is predicated by the law the duty of the physician to exercise the requisite skill and care, and such duty is affected not at all, by the fact that the service rendered is gratuitous or by the fact that the physician was employed by a third person, so that no contractual relation existed between him and the patient."

And in article 27 of the same authority the author states:

"It is universally admitted that a physician is liable to his patient for a failure to exercise requisite skill and care, but just what is meant by requisite skill and care is a question much more difficult to answer. The great weight of authority has established the broad and flexible rule that a physician in order to escape the danger of civil liability to a patient must possess that reasonable degree of learning, skill, and experience which ordinarily is possessed by others of his profession; and that he must exercise reasonable and ordinary care and diligence in the exertion of his skill, and the application of his knowledge, and exert his best judgment as to the treatment of the case instructed to him—in short a physician is bound to bestow such reasonable and ordinary care, skill. and diligence as physicians and surgeons in the same neighborhood. in the same general line of practice, ordinarily have and exercise in like cases."

And in article 28 of the same authority, under the title of "School of Medicine" the author states:

"In an action for malpractice a physician or surgeon is entitled to have his treatment of his patient tested by the rules and principles of the school of medicine to which he belongs, and not by those of some other school, because a person professing to follow one system or school of medicine cannot be expected by his employer to practice any other, and if he performs the treatment with ordinary skill and care in accordance with his system, he is not answerable for bad results. * * *"

Further on in the same article, we find this language:

"The proposition that one holding himself out as a medical practitioner, and as competent to treat human maladies, who accepts a person as a patient, and treats him for disease, may, because he resorts to some peculiar method of determining the nature of the disease and the remedy therefor, be exonerated from all liability for unskilfulness on his part, no matter how serious the consequences may be, cannot be entertained."

And under article 23 of the same authority, in a discussion of diagnosis and treatment and the various acts which may or may not constitute negligence on the part of the physician or surgeon, the author states:

"Whether the particular act was negligence is for the jury to decide after considering the circumstances of the case. Surgeons cannot relieve themselves from liability for injury to a patient caused by leaving a sponge in the wound after an operation by the adoption of a rule requiring the attending nurse to count the sponges used and removed, and relying on such count as conclusive that all sponges have been accounted for. A physician or surgeon must exercise due care in selecting his assistants. and he must after performing an operation exercise the same care and skill in the subsequent necessary treatment as in performing the operation, unless the terms of employment otherwise limit the services."

We might quote at great length along this line concerning the relationship of physician and patient and the degree of care and the duty that the physician owes his patient. These are good and wholesome rules of law, and no reputable physician, surgeon, or practitioner of any science looking to the cure of disease and relief of those who are ailing should object to the high standard that is required of the physician in the discharge of his duty to his patient, and we know from experience and observation that the reputable practitioner does not object to the standard established, but in fact endorse them, and many of the laws which we have regulating, controlling, and setting such standards have been fostered by the profession, and while there may be some question as to whether or not rules of law applicable to the old and established schools of medicine and surgery are applicable to

the chiropractor, in our judgment they are, and we have no reason to believe that the school of science known as chiropractics objects to being measured by the same high standards, and while the rules announced are not directly applicable to the case at bar, we think that by analogy we can properly apply the same to this case in justice to all concerned.

Dr. Avery, the party charged with administering the treatment to the plaintiff in this case, was a student in the Chiropractic College, and, we take it would be termed an intern in the regular schools of medicine. He evidently had acquired that degree of knowledge, and obtained that degree of efficiency in the practice of his profession and science to lead the professor, dean or parties in charge of the institution, to believe that he was capable of administering treatment with a reasonable degree of skill. It is at least fair to presume that the authorities in charge of the institution so regarded him, and we think under the rules heretofore announced the Chiropractic College should be held liable and responsible for the acts and conduct of those whom they place in charge of patients entering the institution for treatment, regardless of whether the treatment be gratuitous or otherwise. A clinic as an adjunct to a college of this character is a necessary and essential part of the institution, and is maintained not for the benefit of charity, but for the benefit of the institution and its students and the institution is a private corporation created for business purposes and for profit, and while those who practice and believe in the science may feel that it is an institution in the nature of a public beneficiary and should be regarded in the same light as charitable institutions, the law does not so consider it, and in our judgment the institution is clearly liable for any negligence or lack of ordinary care on the part of its servants, employes, and students, who are placed in charge of persons entering the institution for treatment.

Should a patient receive such injuries as are here complained of when under the treatment of a regular physician or surgeon as a patient, or in a clinic operated in connection with one of the regular schools of medicine and surgery by a student, or intern of the school, there would be no question as to liability.

The question of the condition of the operating table is not of special importance, it is not material just how and what caused the injury. If the patient was injured by the practitioner while submitting to treatment, and under his immediate care, that is sufficient. However, the operating table being an important part of the paraphernalia of a chiropractor in the adjustment of his patients, it should be properly constructed and so maintained as to avoid injuries such as are here complained of. The table used by a chiropractor in making adjustments bears a similar relation to the chiropractor as surgical instruments sustain to a surgeon, who is required to exercise a high degree of care in the preparation and care and manner of using his instruments.

The question of the injury and the extent thereof is one of fact for the determination of the jury under proper instruction, and from an examination of the record we think the findings of the jury are sustained by the evidence.

Appellant contends that the judgment was excessive in amount, but we find no merit in such contention. Appellant further complains of the instruction No. 4, in that the court instructs the jury:

"Providing it is shown that the character of the treatment she received is not such treatment as is usually furnished at such clinics by said students"

—for the reason that there is neither pleading nor proof justifying the same. In this contention appellant is correct, but this portion of the instruction is entirely superfluous, it was not necessary in this case to plead or prove that fact, where the injury complained of was of such violent and serious nature, as the fracturing of two ribs. Such negligence, on the part of a person who holds himself out as a physician who can alleviate suffering and restore the sick to health, in dealing with his patients, cannot be excused.

The profession which gives its time and talent to the attention of human suffering and to the restoration and maintenance of health is a most beneficent and highly honorable calling, and we trust that we have announced no rule of law applicable to the same that may seem harsh or unjust. From a careful examination of the record in this case, and the law which we deem applicable thereto, we are unable to agree with the contention of appellant, and finding no error which would justify a reversal of the judgment rendered, we recommend that the same be affirmed.

By the Court: It is so ordered.