**Melba Louise BERRY, Plaintiff,**

v.

**Guy L. ODOM, William T. Weaver, and Duke University, Defendants.**

**No. C-181-D-62.**

United States District Court
M. D. North Carolina,
Durham Division.

Oct. 15, 1963.

---

C. Horton Poe, Jr., Durham, N. C., for plaintiff.

E. C. Bryson and Marshall T. Spears, Durham, N. C., for defendant, Duke University.

EDWIN M. STANLEY, Chief Judge.

The plaintiff seeks the recovery of damages for personal injuries allegedly sustained while a patient at Duke University Hospital on July 7, 1961. It is alleged that the defendant, Dr. William T. Weaver, was employed by the defendant, Duke University, as an intern, and that at the time of plaintiff's injuries he was the agent and servant of the defendants, Dr. Guy L. Odom and Duke University, and was acting within the scope of his agency and employment. There is no allegation that the defendant, Duke University, failed to exercise due care in the selection of Dr. Weaver as an employee. Jurisdiction is founded on diversity of citizenship.

The defendant, Duke University, has moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A., for summary judgment in its favor on the ground that the pleadings and admissions, together with the affidavits filed by said defendant, show that there is no genuine issue as to any material fact concerning its status as a charitable or eleemosynary corporation, and that it is entitled to a judgment as a matter of law. While the plaintiff has filed a response opposing the motion, she does not controvert any of the material facts established by the pleadings and the affidavits filed by the movant.

It is well established in North Carolina that a charitable or eleemosynary institution, which has exercised due care in the selection of its employees, cannot be held liable for injuries resulting from their negligence. Green v. Biggs, 167 N.C. 417, 83 S.E. 553 (1914) and Johnson v. City Hospital Co., 196 N.C. 610, 146 S.E. 573 (1929). This seems to be the prevailing rule in most jurisdictions. Memorial Hospital, Inc. v. Oakes, 200 Va. 878, 108 S.E.2d 388 (1959). The rule has also been recognized by the Court of Appeals for the Fourth Circuit. Ettlinger v. Trustees of Randolph-Macon College, 4 Cir., 31 F.2d 869 (1929). Indeed, the plaintiff concedes that if the defendant, Duke University, is a charitable or eleemosynary institution, and it exercised ordinary care in the selection and retention of the defendant, Dr. William T. Weaver, it is immune from liability for his negli-

gence. Since there is neither allegation nor contention that Duke University was negligent in the selection and retention of Dr. Weaver, the only question for decision is whether Duke University has been shown to be a charitable or eleemosynary institution.

The evidence bearing on the status of Duke University as a charitable or eleemosynary institution consists of the pleadings, affidavits filed by Duke University, the charter of Duke University and interrogatories answered by said defendant. Since the plaintiff filed no affidavits in response, it is concluded there is no genuine issue as to any material fact bearing upon the question for decision. Rule 56(e), Federal Rules of Civil Procedure, 28 U.S.C.A.

From the evidence submitted, it appears that Duke University was originally chartered by the 1840–41 General Assembly of the State of North Carolina as Union Institute Academy. In 1850 the name was changed to Normal College. The primary purpose of the institution at that time was to train qualified personnel to teach in public schools of North Carolina. In 1858 the name was again changed to Trinity College. The declared purpose of the corporation at that time was that of operating "a literary institution for the North Carolina Conference of the Methodist Episcopal Church South." In 1891 the charter was again amended to provide for the removal of the operations of Trinity College from Randolph County to "at or near the Town of Durham in North Carolina." There were other revisions of the charter in 1903, which, among other things, empowered the faculty and trustees to confer " * * * such degrees and marks of honor as are conferred by colleges and universities generally: * * *" The final amendment to the charter was in 1924, when the name was changed from Trinity College to Duke University. In the latter amendment, the corporation was given perpetual existence, and was authorized to receive and hold by gift, devise, purchase, or otherwise, property, real and personal, for the use of its purposes as an educational institution.

Duke University is a non-stock, educational corporation and consists of the undergraduate colleges, and the school of arts and sciences, the school of law, the school of medicine, the school of divinity, and the school of nursing as graduate schools. The Duke University Hospital is a unit of the corporation and is adjunct to the School of Medicine.

For the fiscal year ended June 30, 1962, 50.86% of the total cost of operating Duke University was derived from revenue accruing through the operation of the university, including the hospital and the medical school, and all auxiliary sources, leaving a deficit of 49.14%, which was made up through endowment income grants, gifts, and income from charitable or benevolent sources. The University declares no dividends, and no persons, including trustees, officers and employees, derive any private gain or profit from the operation of the institution. All revenues which accrue to the University from any source whatsoever are used to further the objects and the purposes of the University as set forth in its charter.

The crucial question is whether, under the foregoing facts, the defendant, Duke University, is a charitable or eleemosynary institution.

In 14 C.J.S. Charities § 2, at page 417, it is stated that the principal and distinctive features of charitable corporations "are that they have no capital stock and no provision for making dividends or profits, but derive their funds mainly from public and private charity and hold them in trust for the object of the institutions. In other words, the test of whether an enterprise or institution is charitable is whether it exists to carry out a purpose recognized in law as charitable, or whether it is maintained for gain, profit, or private advantage."

In Fletcher Cyclopedia Corporations, Volume 1, § 56, it is stated:

"Eleemosynary corporations, sometimes called 'charitable corporations'

are such as are created, not for private gain nor profit, but for charitable purposes—for the administration of charitable trusts. They are distinguished from 'civil' corporations. Included in the class of eleemosynary corporations are corporations created for the purpose of maintaining hospitals and homes for the sick, insane and poor, and for the purpose of maintaining endowed libraries or colleges.

\* \* \* \* \* \*

"One of the distinctive marks of eleemosynary corporations is the absence of shares of stock to benefit the members by personal profit. This does not mean that they cannot take pay for services, if profit is not the object thereof. The true test of such an institution is its origin and objects. If it is founded on donations, and has for its purpose the accomplishment of a charity by the distribution of alms, it most unquestionably is eleemosynary."

One of the early definitions of an eleemosynary corporation, and which is still a correct statement of law, is to be found in Trustees of Dartmouth College v. Woodward, 4 Wheat. 517, 4 L.Ed. 629 (1819). In speaking of Dartmouth College, the court stated, at page 562 of 4 Wheat., 4 L.Ed. 629, the following:

"The corporation in question is not a civil, although it is a lay corporation. It is an eleemosynary corporation. It is a private charity, originally founded and endowed by an individual, with a charter obtained for it at his request, for the better administration of his charity. 'The eleemosynary sort of corporations are such as are constituted for the perpetual distributions of the free-alms or bounty of the founder of them, to such persons as he has directed. Of this are all hospitals for the maintenance of the poor, sick and impotent; and all colleges both in our universities and out of them.' 1 Bl.Com. 471. Eleemosynary corporations are for the management of private property, according to the will of the donors; they are private corporations. A college is as much a private corporation as an hospital; especially, a college founded as this was, by private bounty."

The "status as an eleemosynary institution is not affected by the fact that it derives a part of its operating costs from pay students" or patients, when the balance of these costs comes from endowments and gifts. Z. Smith Reynolds Foundation v. Trustees of Wake Forest College, 227 N.C. 500, 42 S.E.2d 910 (1947).

There can be little question but that Duke University is an eleemosynary or charitable corporation. It has no capital stock and there is no provision for declaring dividends. Practically one-half of its income is derived from endowments and gifts. There is no opportunity for personal profit by anyone. The fact that it makes a charge to its students and hospital patients does not affect its status as a charitable or eleemosynary corporation.

The plaintiff places great reliance upon Waynick v. Reardon, 236 N.C. 116, 72 S.E.2d 4 (1952), and asserts that the North Carolina Supreme Court held in this case that Duke University was liable for the torts of its agents. An examination of this case discloses that at the close of the evidence the trial court was of the opinion that there was insufficient evidence of negligence to submit the case to the jury. There was no ruling on the claim of immunity asserted by Duke University. The Supreme Court of North Carolina disagreed, and stated in its opinion that if the doctor involved was guilty of actionable negligence, such negligence was imputable to his co-defendant, Duke University. It would appear that this observation was unnecessary to a decision in the case, and that the only question submitted to the Supreme Court for decision was whether there was sufficient evidence of negligence on the part of the doctor to submit the case to the jury. In Smith v. Duke University, 219 N.C. 628, 14 S.E.2d 643

 

(1941), an action against a doctor and Duke University to recover damages for injuries allegedly caused by negligent treatment, the case was dismissed for lack of evidence on the question of negligent treatment. The Supreme Court held that it was unnecessary to determine whether Duke University was an eleemosynary institution, and thus exempt from liability for negligence on the part of its agents, since it concluded that a non-suit was properly allowed on other grounds. It would seem that it was no more necessary to decide the status of Duke University as an eleemosynary corporation in the Waynick case than it was in the Smith case.

The court is of the opinion, and finds as a fact, that Duke University, at the time of the injuries complained of by the plaintiff, was an eleemosynary institution, and thus immune from liability for the torts of its agents. As earlier noted, it is not contended that Duke University failed to exercise ordinary care in the selection and retention of the employee in question. It follows that the motion of the defendant, Duke University, for summary judgment in its favor should be allowed.

A judgment will be entered accordingly.