NEVA McEACHERN, ADMINISTRATRIX OF ESTATE OF OSCAR McEACHERN v. DR. W. H. MILLER, JASPER JONES AND WAYNE COUNTY MEMORIAL HOSPITAL

No. 698SC148

(Filed 27 August 1969)

1. Hospitals § 3;  Charities and Foundations § 3— doctrine of charitable immunity

Judgment of nonsuit was properly allowed in wrongful death action against defendant hospital where the cause of action arose on 4 August 1963, the rule of charitable immunity having been overruled in North Carolina only as to cause of action arising after 20 January 1967, the date of filing the opinion in *Rabon v. Hospital*, 269 N.C. 1.

2. Physicians and Surgeons § 19— malpractice — failure to provide proper treatment — sufficiency of evidence

In this action for wrongful death against a physician for failure to provide proper medical treatment to plaintiff's husband who had suffered a gunshot wound, defendant's motion for nonsuit was properly allowed where plaintiff's evidence tended to show that on the basis of defendant's experience as a surgeon it was his judgment that the best course of action was to keep the patient under observation and rely upon the body's own healing process rather than to operate, and that death was caused by a heart attack which was unrelated to the gunshot wound, there being no evidence that defendant failed in any way to exercise reasonable care and diligence in the application of his knowledge and skill to his patient's case or that anything which defendant did or failed to do was the cause of the patient's death.

APPEAL by plaintiff from *Bowman, J.,* October 1968 Session of WAYNE Superior Court.

This is a civil action to recover for wrongful death. In substance plaintiff alleged in her complaint that on 3 August 1963 her intestate, Oscar McEachern, was shot in the abdomen by defendant Jasper Jones; that shortly thereafter he was taken to the defendant hospital and became the patient of the hospital and of its staff physician, the defendant Dr. W. H. Miller; and that he died on 4 August 1963 as a result of the joint and concurrent negligence of both the doctor and the hospital in failing to provide proper medical treatment. The hospital and the doctor each separately demurred to the complaint for misjoinder of parties and causes. Before the hearing on these demurrers the plaintiff took a voluntary nonsuit as to defendant Jones. The superior court sustained the demurrers and on a previous appeal, reported in *McEachern v. Miller,* 268 N.C. 591, 151 S.E. 2d 209, the North Carolina Supreme Court reversed the judgment sustaining the demurrers, holding there was no misjoinder.

Upon trial of the action and at close of plaintiff's evidence motions of nonsuit made by defendant hospital and defendant doctor were allowed, and from judgment dismissing the action as to both defendants, plaintiff appealed.

*Samuel S. Mitchell and Earl Whitted for plaintiff appellant.*

*Smith, Leach, Anderson & Dorsett, by John H. Anderson, for Dr. W. H. Miller, defendant appellee.*

*Dupree, Weaver, Horton, Cockman & Alvis, by Jerry S. Alvis, for Wayne County Memorial Hospital, defendant appellee.*

PARKER, J.

[1]   Appellant's brief concedes there was no error in the judgment of nonsuit as to the defendant hospital, since the rule of charitable immunity was overruled in North Carolina only as to causes of action arising after 20 January 1967, the date of filing the opinion in *Rabon v. Hospital,* 269 N.C. 1, 152 S.E. 2d 485, and the cause of action in the present case arose 4 August 1963. Moreover, a careful review of the record reveals a total absence of any evidence of negligence on the part of the hospital and judgment of nonsuit as to it would in any event have been proper.

The sole assignments of error brought forward and argued in appellant's brief relate to the allowance of motion of nonsuit made by the defendant doctor and entry of judgment dismissing plaintiff's

action. At the trial of the case plaintiff introduced the following evidence: Plaintiff, who was wife of the deceased, testified she saw her husband in the emergency room of the hospital at 3:30 p.m. on 3 August 1963; that he stayed in the emergency room until approximately 6:40 p.m. before he was admitted in the hospital; that she left the hospital at approximately 6:45 p.m. and returned approximately 7:00 p.m.; that she remained at the hospital approximately 30 minutes, after which she left and did not return until the next morning; that at no time did she see the defendant doctor at the hospital; that she returned the following morning at approximately 10:00 a.m., at which time her husband seemed to be in fair condition; that she did not see the doctor at the hospital that morning, and the first time she saw the doctor was at his office some days after her husband died; that the doctor had then talked to her about her husband's death and had told her that he had been to see her husband at about 10:00 o'clock on Saturday night and then didn't go back until about 11:00 o'clock Sunday; that he told her he didn't do anything but let nature take its course, and further told her how he had gone into some people in surgery and they had died. Mrs. McEachern also testified that prior to his admission in the hospital her husband had never been sick except for a couple of days.

Plaintiff offered the evidence of Dr. Nathaniel F. Rodman, Jr., a pathologist on the faculty of the School of Medicine at the University of North Carolina, who was stipulated to be a medical expert specializing in the field of pathology, and who testified that he had performed an autopsy on the body of the deceased by permission of the plaintiff; he testified concerning the location of the bullet wound in the deceased's body; and further testified that the deceased had an enlarged heart and an old scar in the back wall of the heart muscle, indicating an old heart attack; that the deceased had severe arteriosclerosis; that he observed generalized acute peritonitis in the abdominal cavity, which in his opinion was directly caused by the perforations made by the bullet wound; that in his opinion the deceased had died as a result of a heart attack and he had so stated in the autopsy report; that he saw no evidence that there was any connection between the peritonitis and the heart attack; that from his experience as a pathologist he knew of no cause and effect relationship between peritonitis and the coronary artery occlusion which he thought had been the cause of death.

Plaintiff also examined the defendant, Dr. W. H. Miller, as an adverse witness. Dr. Miller testified that he had been notified at 4:00 o'clock in the afternoon that Oscar McEachern was in the hospital; that he directed the nurse at the hospital to make immediate

blood count, urine analysis, x-rays, and test blood pressure, pulse and respiration; that these tests were made; that he arrived at the hospital at approximately 8:00 p.m. when he examined McEachern, finding that he then had stable blood pressure, and stable pulse, and at that time his patient showed no signs of any imminent shock or loss of blood; that he determined that the patient should be treated for his pain and should be carefully observed; that from his experience in the treatment of gunshot wounds, nature had its own mechanism of defense and uncontrolled hemorrhaging might result if the body was disturbed unduly; that therefore in many cases of gunshot wounds the doctor will watch it in hopes that nature will exert her barrier; that he had exercised his best judgment in arriving at that decision and that judgment was in accord with accepted and approved medical and surgical practice in this State. Dr. Miller further testified he had examined Oscar McEachern again between 8:30 and 9:00 a.m. the following morning at which time he had checked his pulse, and did not like the quality of his pulse; that for that reason he again examined McEachern about 10:30 a.m., at which time McEachern talked with him; that it was his judgment at that time that there should be no change in the course of treatment.

There was evidence that at approximately 12:00 noon Oscar McEachern very suddenly went into profound shock and died. There was also evidence that the defendant doctor had signed the death certificate in which he had listed as cause of death "hemorrhage, abdominal, due to gunshot wound of abdomen." Dr. Miller testified that to make an accurate diagnosis as to cause of death one needs an autopsy, and that he did not have access to the autopsy report at the time he signed the death certificate.

[2]    In ruling on motion for nonsuit we are required to take as true all of the plaintiff's evidence which tends to support her claim, to consider it in the light most favorable to her, to give her the benefit of every reasonable inference which may legitimately be drawn therefrom, and to resolve any contradictions and discrepancies therein in her favor. *Clarke v. Holman,* 274 N.C. 425, 163 S.E. 2d 783. Even when so considered, plaintiff's evidence in the present case fails to make out a case for the jury. The standard of care required of a physician or surgeon was well stated by Higgins, J. in *Hunt v. Bradshaw,* 242 N.C. 517, 521, 88 S.E. 2d 762, 765, as follows:

"A physician or surgeon who undertakes to render professional services must meet these requirements: (1) He must

possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess; (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and (3) he must use his best judgment in the treatment and care of his patient. (Citing cases.) If the physician or surgeon lives up to the foregoing requirements he is not civilly liable for the consequences. If he fails in any one particular, and such failure is the proximate cause of injury and damage, he is liable."

In the present case there was no evidence, and plaintiff does not contend, that Dr. Miller was in any way deficient in professional learning, skill or ability. On the contrary plaintiff stipulated that the doctor was a medical expert in the field of general surgery. There was no evidence that he failed in any way to exercise reasonable care and diligence in the application of his knowledge and skill to his patient's case or that he failed in any respect to use his best judgment in the treatment and care of his patient. Dr. Miller himself testified that on the basis of his experience as a surgeon it was his judgment that the best course of action for his patient was to keep him under observation and to rely upon the body's own healing processes rather than to operate, and that indeed an operation might have been extremely dangerous. There was no evidence, by opinion evidence or otherwise, that good medical treatment would require any affirmative action that was not here performed, or that anything which the doctor did prescribe was improper.

Furthermore, there is no evidence that anything which the doctor did or failed to do in this case was the cause of the patient's death. The pathologist who performed the autopsy testified that in his opinion death was caused by a heart attack which was unrelated to the bullet wound. The only evidence to the contrary was contained in the death certificate, which was prepared by the defendant doctor himself without benefit of an autopsy and which indicated death was due to hemorrhaging from a gunshot wound. Even resolving this conflict in the evidence in plaintiff's favor, there is simply no evidence that anything which the doctor did or failed to do in this case was the proximate cause of the patient's death.

In the judgment of nonsuit dismissing plaintiff's action there was

No error.

Mallard, C.J., and Britt, J., concur.