CHARLES DARSIE, GUARDIAN AD LITEM FOR LOLA MAE HARDY v. DUKE UNIVERSITY

No. 7914SC990

(Filed 5 August 1980)

Charities and Foundations § 3; Hospitals § 3.1– Duke University – charitable institution – immunity from suit for 1961 injuries at Duke Hospital

Under the law of charitable immunity as it existed in 1961 when the injuries in question allegedly occurred, defendant Duke University was, as a matter of law, a charitable institution and is therefore immune from liability for the negligence of its employees in the treatment of patients at Duke Hospital absent proof that it failed to exercise due care in the selection or retention of the employees charged with negligence.

APPEAL by plaintiff from *Herring, Judge.* Judgment entered 22 August 1979 in Superior Court, DURHAM County. Heard in the Court of Appeals 17 April 1980.

On 13 February 1979, plaintiff, guardian ad litem for Lola Mae Hardy, commenced this action for damages for personal injury suffered by Lola Mae Hardy while a patient at the Duke University Medical Center on 26 October 1961, allegedly due to defendant's negligence. Defendant, by its answer, averred, *inter alia,* that "[a]s an eleemosynary corporation, having used due care in the selection, training and retention of such em-

Darsie v. Duke University

ployees, it is advised and believes and so alleges that it cannot be held liable for injuries resulting from their negligence, if any injury to Lola Mae Hardy did result from the negligence of any employees ... ." On 3 July 1979, plaintiff moved pursuant to G.S. 1A-1, Rule 56 of the North Carolina Rules of Civil Procedure, for partial summary judgment on defendant's defense of charitable immunity. On 25 July 1979, defendant filed a cross-motion for summary judgment, supported by affidavits, which incorporated defendant's charter and by-laws under which it operated at the time the incident allegedly occurred.

According to the affidavit of J. Peyton Fuller, defendant's Assistant Vice President and Corporate Controller, defendant is a "non-stock educational corporation" which includes the Duke University Medical Center. He stated that Duke Hospital is a unit within the Medical Center, "without any separate status or identity." Referring to the annual audit performed for the years 1961-62, the affidavit stated that for the fiscal years 1961 and 1962, "[t]he financial operations of Duke Hospital were treated as a part of the total financial operation of Duke University", and during 1961-62, only forty-five percent of the total operating costs of the University was derived from revenue from the operation of the University, which included Duke Hospital and all "auxillary sources". The deficit of fifty-five percent was made up, according to Fuller, through "grants, gifts, and income from charitable or benevolent sources." Fuller stated further:

> Duke University as a non-stock corporation, declares no dividends, and no person, trustee, officer or employee of Duke University derives any private gain or profit from the operation of the University. All revenue which accrues to the University from any sources whatsoever is used to further the objects and purposes of Duke University as set forth in its charter.

> The United States Treasury Department has ruled that Duke University is a non-profit educational institution and is exempt from the provisions of the federal income tax laws and that contributions to Duke University are deductible by donors in computing their taxable income ....

Since "Duke Hospital" was an integral and inseparable part of Duke University, the United States Treasury Department expressly held that Duke Hospital shared the tax exempt status of Duke University. This rule was in effect during the 1961-62 fiscal year of Duke University.

By stipulation the trial court heard defendant's summary judgment motion before it heard plaintiff's. In an order entered and filed 22 August 1979, the trial court ruled in favor of defendant and dismissed plaintiff's claim. From the judgment entered upon the trial court's conclusion, as a matter of law, that defendant was a charitable institution, thus enabling it successfully to plead the defense of charitable immunity, plaintiff appeals.

*Grover C. McCain, Jr., and James B. Archbell for plaintiff appellant.*

*Newsome, Graham, Hedrick, Murray, Bryson and Kennon, by E.C. Bryson, Jr., for defendant appellee.*

MORRIS, Chief Judge.

Plaintiff's sole contention on appeal is that defendant may not assert the defense of charitable immunity for negligence in the medical treatment furnished by Duke Hospital because the hospital operations, although an integral part of Duke University, constitute a commercial and noncharitable enterprise. Plaintiff argues that although the University as a whole operated as a charitable institution during the fiscal year 1961-62 because only forty-five percent of the total cost of operating the University was derived from revenue accruing through the operation of the University, for the same period approximately ninety-six percent of the costs of operating Duke Hospital were covered by patient receipts, income from the public dispensary, and other revenue. Plaintiff argues further that "while 55% of the operating costs of the University were covered by grants, gifts and income from charitable or benevolent sources, only 1.73% of the costs of operating the Hospital were covered by gifts and grants from the Duke Endowment and other sources." In order properly to answer plaintiff's contentions, we must first review the law with respect to charitable immunity.

The doctrine of charitable immunity in North Carolina was abolished in 1967 in *Rabon v. Rowan Memorial Hospital, Inc.,* 269 N.C. 1, 152 S.E. 2d 485 (1967), and the subsequent enactment the same year of G.S. 1-539.9 by the General Assembly. Since the injury on which this lawsuit is based occurred in 1961, whether defendant may claim charitable immunity in this case must be determined in light of the law existing prior to 1967.

The rule of tort liability, as it existed before *Rabon,* was explained by Justice Sharp (later Chief Justice), writing for the majority, as follows:

In *Williams v. Hospital,* 237 N.C. 387, 389, 75 S.E. 2d 303, 304, it is said:

"It is settled law in this jurisdiction that a charitable institution may not be held liable to a beneficiary of the charity for the negligence of its servants or employees if it has exercised due care in their selection and retention. *Barden v. R.R.,* 152 N.C. 318, 67 S.E. 971; *Hoke v. Glenn,* 167 N.C. 594, 83 S.E. 807; *Herndon v. Massey,* 217 N.C. 610, 8 S.E. 2d 914; *Johnson v. Hospital,* 196 N.C. 610, 146 S.E. 573; *Smith v. Duke University,* 219 N.C. 628, 14 S.E. 2d 643."

. . .

Decided cases indicate that the present state of the law in North Carolina is as follows: A patient, paying or nonpaying, who is injured by the negligence of an employee of a charitable hospital may recover damages from it only if it was negligent in the selection or retention of such employee, *Williams v. Hospital, supra, Williams v. Hospital Asso., supra,* or perhaps if it provided defective equipment or supplies. *Payne v. Garvey,* 264 N.C. 593, 142 S.E. 2d 159. A stranger (anyone who is not a beneficiary of the charity, i.e., one other than a patient) who is injured by the negligence of *any* employee, however, may collect damages from the hospital. *Cowans v. Hospitals,* 197 N.C. 41, 147 S.E. 672. Nor does the fact that a charitable institution has procured

liability insurance affect its immunity. *Herndon v. Massey*, 217 N.C. 610, 8 S.E. 2d 914.

269 N.C. 3-4, 152 S.E. 2d at 486-87. Assuming the status of a charitable institution, defendant is, under *pre-Rabon* law, immune from liability for the negligence of Duke Hospital or its employees. The only question before us is, therefore, whether defendant was a charitable institution at the time of its alleged negligence, which would enable defendant to assert the defense of charitable immunity as a bar to plaintiff's claim.

Generally defined, a charitable institution is an organization or other entity engaged in the relief or aid to a certain class of persons, a corporate body established for public use, or a private institution created and maintained for the purpose of dispensing some public good or benevolence to those who require it. *See generally, Z. Smith Reynolds Foundation, Inc. v. Trustees of Wake Forest College*, 227 N.C. 500, 42 S.E. 2d 910 (1947); *Habuda v. Trustees of Rex Hospital, Inc.*, 3 N.C. App. 11, 164 S.E. 2d 17 (1968); 14 C.J.S., *Charities* § 2 (1939). As to educational institutions, whether a particular institution of learning is charitable depends on whether it is operated for public benefit or for private gain. *E.g., Ettlinger v. Trustees of Randolph-Macon College*, 31 F. 2d 869 (4th Cir. 1929); *Trustees of Iowa College v. Baillie*, 236 Iowa 235, 17 N.W. 2d 143 (1945). The same test has been applied to public hospitals which are established and maintained for charitable purposes. *E.g., Helton v. Sisters of Mercy of St. Joseph's Hospital*, 234 Ark. 76, 351 S.W. 2d 129 (1961); *Danville Community Hospital, Inc. v. Thompson*, 186 Va. 746, 43 S.E. 2d 882 (1947). *Contra, e.g., Adkins v. St. Francis Hospital of Charleston, W.Va., Inc.*, 149 W.Va. 705, 143 S.E. 2d 154 (1965); *White v. Charity Hospital of Louisiana in New Orleans*, 239 So. 2d 385 (La.App. 1970).

In *Martin v. Board of Commissioners of Wake County*, 208 N.C. 354, 180 S.E. 777 (1935), the Court held that a hospital created by the General Assembly and maintained to provide medical treatment and hospital care for the indigent sick and afflicted poor within the county, and supported by donations by individuals as well as by sums paid by patients who are able to pay for services rendered to them, primarily was a charitable

Darsie v. Duke University

institution. *See also Habuda v. Rex Hospital, Inc.*, *supra* (wherein this Court held *Martin* controlling on issue of whether Rex Hospital was charitable in 1964). Similarly, in *Z. Smith Reynolds Foundation, Inc. v. Trustees of Wake Forest College*, *supra*, the Court characterized both the Foundation and Board of Trustees as charitable in nature. As to the Trustees, the Court stated:

> "The trustees of Wake Forest College" is declared to be a non-profit, educational institution existing and performing its functions with the support of the Baptist denomination in the State, operating through its local churches and the Baptist State Convention of North Carolina, and as such is a charitable corporation under the laws of the State of North Carolina.

227 N.C. at 510, 42 S.E. 2d at 916.

This same rationale was enunciated in *Berry v. Odom*, 222 F. Supp. 467 (M.D.N.C. 1963), where the Court held that a lawsuit similar to the case at bar was barred by defendant Duke University's status as a charitable organization. In *Berry*, plaintiff sought recovery for personal injuries allegedly sustained while a patient at Duke University Hospital in 1961. Defendant Duke University moved for summary judgment in its favor on the ground that it was a charitable or eleemosynary corporation and thus immune from tort liability. There, plaintiff conceded for the purposes of argument that if defendant Duke University was a charitable institution, and it exercised ordinary care in the selection and retention of the treating physician, no liability results.

After stating the law as discussed above, the Court reviewed the following undisputed material facts:

> From the evidence submitted, it appears that Duke University was originally chartered by the 1840-41 General Assembly of the State of North Carolina as Union Institute Academy. In 1850 the name was changed to Normal College. The primary purpose of the institution at that time was to train qualified personnel to teach in public schools of

North Carolina. In 1858 the name was again changed to Trinity College. The declared purpose of the corporation at that time was that of operating "a literary institution for the North Carolina Conference of the Methodist Episcopal Church South." In 1891 the charter was again amended to provide for the removal of the operations of Trinity College from Randolph County to "at or near the Town of Durham in North Carolina." There were other revisions of the charter in 1903, which, among other things, empowered the faculty and trustees to confer "* * * such degrees and marks of honor as are conferred by colleges and universities generally: * * *" The final amendment to the charter was in 1924, when the name was changed from Trinity College to Duke University. In the latter amendment, the corporation was given perpetual existence, and was authorized to receive and hold by gift, devise, purchase, or otherwise, property, real and personal, for the use of its purposes as an educational institution.

Duke University is a non-stock, educational corporation and consists of the undergraduate colleges, and the school of arts and sciences, the school of law, the school of medicine, the school of divinity, and the school of nursing as graduate schools. The Duke University Hospital is a unit of the corporation and is adjunct to the School of Medicine.

For the fiscal year ended June 30, 1962, 50.86% of the total cost of operating Duke University was derived from revenue accruing through the operation of the university, including the hospital and the medical school, and all auxiliary sources, leaving a deficit of 49.14%, which was made up through endowment income grants, gifts, and income from charitable or benevolent sources. The University declares no dividends, and no persons, including trustees, officers and employees, derive any private gain or profit from the operation of the institution. All revenues which accrue to the University from any source whatsoever are used to further the objects and the purposes of the University as set forth in its charter.

The crucial question is whether, under the foregoing facts, the defendant, Duke University, is a charitable or eleemosynary institution.

222 F. Supp. at 469. On these facts the Court concluded as follows:

There can be little question but that Duke University is an eleemosynary or charitable corporation. It has no capital stock and there is no provision for declaring dividends. Practically one-half of its income is derived from endowments and gifts. There is no opportunity for personal profit by anyone. The fact that it makes a charge to its students and hospital patients does not affect its status as a charitable or eleemosynary corporation.

The Court distinguished *Waynick v. Reardon,* 236 N.C. 116, 72 S.E. 2d 4 (1952), where the Court held the evidence presented in that case was sufficient to go the jury on the question of actionable negligence by defendant Duke University's agent physician. The *Waynick* Court stated that if the doctor involved was guilty of actionable negligence, such negligence was imputable to defendant Duke University. The Court in *Berry,* analyzing the judgment of the trial court in *Waynick,* concluded:

It would appear that this observation was unnecessary to a decision in the case, and that the only question submitted to the Supreme Court for decision was whether there was sufficient evidence of negligence on the part of the doctor to submit the case to the jury.

222 F. Supp. at 470, citing *Smith v. Duke University,* 219 N.C. 628, 14 S.E. 2d 643 (1941) (action against doctor and Duke University for damages resulting from injuries allegedly due to negligent medical treatment held properly dismissed for lack of evidence on question of negligence). The question of charitable immunity was not discussed in either *Waynick* or *Smith.* In *Waynick,* the Court said, speaking through Justice Valentine, "[t]he decisive question presented by this appeal is whether the evidence sufficeth to take the case to the jury." 236 N.C. at 119, 72 S.E. 2d at 6. This was the question before the Court in *Smith.*

---

Darsie v. Duke University

---

The Court found that evidence of negligence was not sufficient to take the case to the jury and, therefore, did not reach the question of charitable immunity.[1]

The undisputed facts presented in this case on defendant Duke University's motion for summary judgment parallel exactly the findings made by the trial court in *Berry*. Finding *Berry* controlling in this instance, we, therefore, hold that the trial court properly granted defendant's summary judgment motion on the ground of charitable immunity.

Plaintiff cites decisions from other jurisdictions which tend to support his position that Duke Hospital, for all practical purposes, was operating as an entity separate from the University, and that the doctrine of charitable immunity is inapplicable in this situation. *E.g., Gamble v. Vanderbilt University*, 138 Tenn. 616, 200 S.W. 510 (1918); *Grueninger v. Harvard College*, 343 Mass. 338, 178 N.E. 2d 917 (1961); *University of Louisville v. Hammock*, 127 Ky. 564, 106 S.W. 219 (1907); *Carver Chiropractic College v. Armstrong*, 103 Okla. 123, 229 P. 641 (1924). Plaintiff argues further that defendant's self-acclaimed status as an eleemosynary institution as stated in its articles of incorporation and charter is not conclusive evidence of defendant's status, and that, in fact, Duke Hospital, separate from Duke University, operated "not by means of charity but rather the patients pay for the vast majority of the services rendered by the defendant hospital." We are not persuaded that the decisions cited by plaintiff are controlling in this case, nor are we of the opinion that Duke Hospital operated for profit rather than for the general purposes of the University. It is well settled that defendant's status as an eleemosynary institution is not affected by the fact that it derives a part of its operating costs

---

[1] Certain decisions of this Court have dealt with the question of charitable immunity. In *Helms v. Williams*, 4 N.C. App. 391, 166 S.E. 2d 852 (1969) and *McEachern v. Miller*, 6 N.C. App. 42, 169 S.E. 2d 253 (1969), the doctrine of charitable immunity was pleaded as a defense to claims of medical malpractice against two hospitals. In *Helms*, the question was whether there was sufficient evidence to require the submission to the jury of an issue of whether the hospital was negligent in hiring and retaining the nurse charged with negligence. In *McEachern*, plaintiff conceded that the doctrine of charitable immunity applied and nonsuit as to the defendant hospital was proper.

Investment Co. v. Greene

from its beneficiaries, which, in this case, are its patients, when the balance of these costs comes from endowments and gifts. *Z. Smith Reynolds Foundation, Inc. v. Trustees of Wake Forest College, supra.* Further, we find nothing in the materials presented which compels us to conclude that Duke University, in fact, treated its hospital operations as separate and distinct from the rest of its college and graduate programs. Duke Hospital, as a teaching facility and medical center, has played an important role in the educational process at Duke University and is an indivisible unit of that institution.

Our narrow holding is that, under the law of charitable immunity as it existed at the time the injuries allegedly occurred in this case, defendant Duke University was, as a matter of law, a charitable institution and is, therefore, immune from liability for the negligence of its employees in the treatment of the patients at Duke Hospital, absent proof that it failed to exercise due care in the selection or retention of the employees charged with negligence.

Affirmed.

Judges PARKER and WELLS concur.