SOUTHMINSTER, INC., PLAINTIFF v. BETSY Y. JUSTUS, SECRETARY, STATE OF NORTH CAROLINA DEPARTMENT OF REVENUE, DEFENDANT

———————————

DAVIDSON RETIREMENT COMMUNITY, INC., PLAINTIFF v. BETSY Y. JUSTUS, SECRETARY, STATE OF NORTH CAROLINA DEPARTMENT OF REVENUE, DEFENDANT

No. COA94-763

(Filed 1 August 1995)

**Taxation § 30 (NCI4th)— homes for elderly—catering to affluent population—homes as charitable institutions**

The trial court erred in concluding that plaintiffs were not charitable organizations within the meaning of N.C.G.S. § 105-164.14(b) so as to qualify for refunds of sales and use taxes where plaintiffs operated homes for the elderly which required entrance fees and monthly service fees, since the natural and ordinary meaning of "charitable" is sufficiently broad to include

aid and assistance provided for the elderly or infirm without regard to individual poverty, and the concept of charity is not confined to the relief of the needy and destitute.

## Am Jur 2d, State and Local Taxation § 387.

Appeal by plaintiffs and defendant from judgment entered 29 March 1994 by Judge Shirley L. Fulton in Mecklenburg County Superior Court. Heard in the Court of Appeals 4 April 1995.

*Robinson, Bradshaw & Hinson, P.A., by Russell M. Robinson, II, Louis A. Bledsoe, III, and J. Stephen Dockery, III, for plaintiffs.*

*Attorney General Michael F. Easley, by Senior Deputy Attorney General Reginald L. Watkins and Special Deputy Attorney General George W. Boylan, for defendant.*

MARTIN, John C., Judge.

Plaintiffs are religiously affiliated, non-profit corporations operating continuing care facilities for the elderly. Plaintiffs commenced these actions to obtain refunds, pursuant to the provisions of G.S. § 105-164.14(b), of sales and use taxes paid by them. Defendant denied plaintiffs' entitlement to the exemption on the grounds plaintiffs are not charitable or religious institutions within the meaning of the statute. The cases were consolidated and heard by the trial court in a bench trial.

The evidence at trial, most of which was stipulated by the parties, tended to show the following: Plaintiff Davidson Retirement Community, Inc., ("The Pines"), was incorporated in 1983 for the purpose of funding and operating a nonprofit home providing health care and assistance in living to the elderly and infirm. The Pines was founded by and is affiliated with the Davidson College Presbyterian Church in Davidson. Plaintiff Southminster, Inc., ("Southminster"), was organized as a nonprofit corporation in 1984 for the express purpose of providing "a residential environment in which older people may live as independently and as actively as their faculties and strength permit, secure in the knowledge that support is available when and as it may be needed." Southminster was created by the joint effort of Myers Park Baptist Church and Christ Episcopal Church in Charlotte, and Southminster has maintained its affiliation with these churches to the present.

The Internal Revenue Service ("IRS") and the North Carolina Department of Revenue have determined that both plaintiffs are non-profit, charitable organizations exempt from federal and state corporate income taxes and state franchise taxes. Plaintiffs are also both exempt from local property taxes as qualifying homes for the aged. G.S. § 105-164.14(b) provides that sales and use taxes must be refunded to "churches, orphanages and other charitable or religious institutions and organizations not operated for profit . . . ." In 1984, the Sales and Use Tax Division of the North Carolina Department of Revenue changed its interpretation of "charitable institutions" under G.S. § 105-164.14(b) to exclude institutions similar to plaintiffs from exemption. The change in policy came as a result of two decisions of this Court upholding determinations by the Property Tax Commission that non-profit homes for the elderly operated similarly to plaintiffs' did not qualify for the charitable purpose exemption from *ad valorem* taxes. *See In re Appeal of Barham*, 70 N.C. App. 236, 319 S.E.2d 657, *disc. review denied*, 312 N.C. 622, 323 S.E.2d 921 (1984); *In re Chapel Hill Residential Retirement Center*, 60 N.C. App. 294, 299 S.E.2d 782, *disc. review denied*, 308 N.C. 386, 302 S.E.2d 249 (1983). The Pines was denied refunds for its sales and use taxes beginning in 1985, while Southminster was denied refunds beginning in 1987.

Both plaintiffs' facilities consist of independent living units, common living units, and health care centers. The Pines opened in 1988, and currently maintains 204 independent and common units with 60 beds in its health care facility. Southminster opened in 1987, and has 196 independent and common living units with 80 beds maintained in its health care center. Plaintiffs received their initial funding for construction from charitable donations and public revenue bonds issued by the North Carolina Medical Care Commission, and plaintiffs continue to receive charitable donations.

Plaintiffs also charge entrance fees and monthly service fees to their residents, with the amount of the fees determined by a resident's choice of living accommodations. The entrance fees at The Pines range from $35,800 for a small efficiency apartment to $115,500 for a large cottage, while the monthly service fees for such accommodations range from $976 to $1,524. This monthly fee is increased by approximately fifty percent if two individuals occupy a unit. Southminster has entrance fees ranging from $30,900 to $162,500 for accommodations similar to those at The Pines, with monthly service fees from $1,000 to $1,350 plus an additional $715 for an additional

occupant. These fees collected by The Pines and Southminster cover, respectively, ninety-six percent and eighty-six percent of plaintiffs' operating expenses.

The average annual income of the residents who had reserved accommodations at The Pines as of 29 August 1988 was $43,000 while their average net worth was approximately $444,000. As of 13 November 1985, over eighty-eight percent of residents reserving a living unit at Southminster reported net worths over $200,000, while sixty-three percent had net worths over $350,000. Over fifty percent of those reserving accommodations at Southminster reported annual incomes over $40,000. Plaintiffs' residents who do not have high net worths and/or annual incomes are generally able to meet the entrance fee and monthly service fees by selling their homes upon entering The Pines or Southminster.

Plaintiffs' contracts with their residents authorize the removal of residents who are unable to meet their financial obligations to plaintiffs; however, it is not the policy of either plaintiff to terminate any resident's occupancy based on an inability to pay. To that end, Southminster created a nonprofit corporation, Southminster Endowment, Inc., and The Pines created a separate deposit account, the Resident Support Fund. These funds receive charitable donations and are plaintiffs' top fundraising priorities. If circumstances require special consideration of a prospective or current resident's ability to pay the entrance or monthly fees, these funds may be used to subsidize part or all of the fees in question. To date, Southminster Endowment, Inc., has financially assisted three residents in meeting the costs of the entrance fee, and nine residents in making their monthly service payments. There has yet to be any assistance provided to a prospective or current resident from The Pines' Resident Support Fund.

There was also evidence that since 1984, defendant had denied refunds for sales and use taxes to six similar institutions, while at the same time granting refunds to five similar institutions. Defendant's enforcement policy is to thoroughly examine refund requests from new institutions, including an examination of fee schedules. However, existing institutions previously exempted from sales and use taxes were not asked for similar information and continued to receive refunds. The evidence indicated defendant lacked the resources necessary to continuously monitor the eligibility of organizations receiving refunds without some indication of an irregularity.

Other evidence indicated defendant's refund policy was not being enforced uniformly.

The trial court made extensive findings of fact and concluded, citing *In re Chapel Hill Residential Retirement Center*, *supra*, that plaintiffs were not charitable organizations exempt from sales and use taxes under G.S. § 105-164.14(b) and, in addition, were not exempt as religious organizations. The trial court concluded, however, that defendant's "arbitrary, inconsistent and inequitable application of the 'charitable and religious' test to allow exemptions for some but not all institutions of like kind" was discriminatory and unconstitutionally vague, thus violating plaintiffs' equal protection and due process rights. The trial court entered judgment in favor of plaintiffs, ordering defendant to refund each plaintiff all sales and use taxes paid for the claimed periods. Plaintiffs appeal from that portion of the judgment holding they are neither charitable nor religious organizations exempt from sales and use taxes; defendant appeals from that portion of the judgment holding that defendant had violated plaintiffs' constitutional rights and awarding them refunds.

---

Plaintiffs assert that the trial court erred by concluding that they are neither charitable organizations nor religious organizations within the meaning of G.S. § 105-164.14(b) so as to qualify for refunds of sales and use taxes. G.S. § 105-164.14(b) provides, in pertinent part:

> The Secretary of Revenue shall make refunds semiannually to . . . churches, orphanages and other charitable or religious institutions and organizations not operated for profit of sales and use taxes paid under this Article,. . ., by such institutions and organizations on direct purchases of tangible personal property for use in carrying on the work of such institutions and organizations.

We first consider plaintiffs' assertion that they are charitable organizations within the meaning of the statute. The terms "charitable institution" and "charitable organization" are not defined in the North Carolina Sales and Use Tax Act, G.S. § 105-164.1 *et seq.*; indeed, no definition for the terms is contained in the entire Revenue Act, G.S. § 105-1 *et seq.*

It is a basic rule of statutory construction that where a statute contains no definition of words used therein, the words of the statute are to be given their natural and ordinary meaning. *In re Clayton-Marcus Co.*, 286 N.C. 215, 210 S.E.2d 199 (1974). With respect to taxation statutes, provisions for exemptions are strictly construed and

ambiguities are resolved in favor of taxation. *Id.* A taxpayer who seeks the benefit of an exemption has the burden of showing that he comes within the exclusion upon which he relies. *Chemical Corp. v. Johnson, Comr. of Revenue,* 257 N.C. 666, 127 S.E.2d 262 (1962). The rule of strict construction does not, however, require that the statute be "stintingly or even narrowly construed" or that relevant language in the statute be given other than its plain and obvious meaning. *Wake County v. Ingle,* 273 N.C. 343, 347, 160 S.E.2d 62, 65 (1968).

Citing the entrance fees and monthly service fees charged by plaintiffs, as well as the financial resources of the residents, defendant argues that plaintiffs "cater only to the affluent and provide no benefits to legitimate objects of charity." The trial court agreed, concluding the "financial and health limitations required for admission prevent plaintiffs from benefitting a significant segment of humanity and an indefinite class of persons who are legitimate subjects of charity."

We do not believe the General Assembly intended, when it enacted G.S. § 105-164.14(b), that such a narrow construction be accorded the word "charitable," nor do we agree that the residents served by plaintiffs are not "legitimate subjects of charity." "Generally defined, a charitable institution is an organization or other entity engaged in the relief or aid to a certain class of persons, a corporate body established for public use, or a private institution created and maintained for the purpose of dispensing some public good or benevolence to those who require it." *Darsie v. Duke University,* 48 N.C. App. 20, 24, 268 S.E.2d 554, 556, *disc. review denied,* 301 N.C. 400, 273 S.E.2d 445 (1980).

The natural and ordinary meaning of "charitable" is sufficiently broad to include aid and assistance provided for the elderly or infirm without regard to individual poverty. "The concept of charity is not confined to the relief of the needy and destitute, for 'aged people require care and attention apart from financial assistance, and the supply of this care and attention is as much a charitable and benevolent purpose as the relief of their financial wants.' " *In re Taxable Status of Property,* 45 N.C. App. 632, 638, 263 S.E.2d 838, 842, *disc. review denied,* 300 N.C. 374, 267 S.E.2d 684 (1980), *quoting Central Board on Care of Jewish Aged, Inc. v. Henson,* 120 Ga. App. 627, 171 S.E.2d 747 (1969). We note also that the IRS has recognized that "charitable" in its generally accepted legal sense includes "[p]roviding for the special needs of the aged . . . where the requisite elements of

relief of distress and community benefit have been found to be present." Rev. Rul. 72-124, 1972-1 C.B. 145.

> Revenue Ruling [72-124] makes clear that a home for the aged will be deemed "charitable" if it meets the special needs of the elderly such as the need for health care, financial security, and residential facilities designed to meet specific physical, social, and recreational requirements of the elderly. Such a home need not provide direct financial assistance to the elderly in order to be "charitable," since poverty is only one form of distress to which the elderly as a class are particularly susceptible.

Rev. Rul. 79-18, 1979-1 C.B. 194. *See also* Rev. Rul. 75-198, 1975-1 C.B. 157. Indeed, the North Carolina Department of Revenue has itself recognized plaintiffs as "bona fide nonprofit, charitable organizations" for the purposes of exemption from State corporate income and franchise taxes under other applicable sections of the Revenue Act.

Our decisions in *In re Chapel Hill Residential Retirement Center, supra,* and *In re Appeal of Barham, supra,* do not control the resolution of this case. In those cases, the issue was whether the property owned by the two non-profit corporations and used as residential care facilities for the elderly, under arrangements similar to those operated by the present plaintiffs, qualified for the *ad valorem* tax exemption provided by G.S. §§ 105-278.6 and 105-278.7 of the Machinery Act, G.S. 105-271 *et seq.* and Article V, § 2(3) of the North Carolina Constitution. We determined that the property did not qualify for the exemption because it was not being held for charitable purposes. The General Assembly responded to our decisions by enacting G.S. § 105-275(32) which specifically excludes from *ad valorem* taxation property owned by "a home for the aged, sick, or infirm . . . and used in the operation of that home." In any event, our Supreme Court has recognized that the rules for determining whether property is exempt from *ad valorem* taxes are distinct from those determining whether a corporation is exempt from the taxes imposed by the Revenue Act. *In re Vanderbilt University,* 252 N.C. 743, 114 S.E.2d 655 (1960).

We hold that even construed strictly, the term "charitable organization" easily accommodates the nature of plaintiff corporations. Plaintiffs are clearly engaged in an humane and philanthropic endeavor to aid and assist the rapidly growing class of elderly citizens of this State, and their activities certainly benefit the larger community which only recently has come to realize the problems associated

with an aging population. Therefore, the trial court erred in concluding that plaintiffs are not charitable organizations.

Because we have determined that plaintiffs are charitable organizations, they are entitled, pursuant to the provisions of G.S. § 105-164.14(b), to refunds of the sales and use taxes paid by them. We need not determine whether they are also religious organizations, nor is it necessary that we determine whether defendant's enforcement of the statute violated plaintiffs' constitutional rights. The judgment ordering defendant to pay such refunds is affirmed, although for reasons different from those stated by the trial court.

Modified and affirmed.

Judges EAGLES and WALKER concur.