JENNIE S. ROBERTS, PLAINTIFF v. FIRST-CITIZENS BANK AND TRUST COMPANY, DEFENDANT

No. COA95-1369

(Filed 17 December 1996)

**1. Appeal and Error § 426 (NCI4th)— cost of printing—violation of rules—taxed against defendant's attorney**

The cost of printing defendant's brief was taxed to defendant's attorney where the brief clearly violated N.C. R. App. P. 26 and N.C. R. App. P. 28. The violations allowed the defendant to gain additional pages of text.

**Am Jur 2d, Appellate Review § 578.**

ROBERTS v. FIRST-CITIZENS BANK AND TRUST CO.

[124 N.C. App. 713 (1996)]

**2. Secured Transactions § 119 (NCI4th)— CD—security for loan—default—notice to debtor**

Where a certificate of deposit was used as collateral to secure a loan, the Court of Appeals held that pursuant to N.C.G.S § 25-9-504(3), upon default, notice to the debtor is required before payment on an instrument is demanded by the secured party as provided by N.C.G.S. § 25-9-502. The Court's ruling does not address whether other forms of collateral subject to N.C.G.S. § 25-9-502 are covered by N.C.G.S. § 25-9-504.

**Am Jur 2d, Secured Transactions §§ 652-680.**

**Sufficiency of secured party's notification of sale or other intended disposition of collateral under UCC § 9-504(3). 11 ALR4th 241.**

**3. Labor and Employment § 77 (NCI4th)— bank employee— discharge for refusal to violate statutes—employment at will—public policy exception**

The trial court correctly denied defendant's motions for directed verdict and JNOV in a wrongful discharge case where the plaintiff bank employee was terminated for refusing to cash out, without notice, a certificate of deposit which was being held as collateral by the defendant employer. The defendant employer's instructions to the plaintiff violated N.C.G.S. § 25-9-502 and N.C.G.S. § 25-9-504; therefore the plaintiff's firing constituted a public policy exception to the employment-at-will doctrine.

**Am Jur 2d, Wrongful Discharge §§ 44-54.**

**Liability for discharging at-will employee for refusing to participate in, or for disclosing, unlawful or unethical acts of employer or coemployees. 9 ALR4th 329.**

**4. Trial § 538 (NCI4th)— violation of statutes—discharge— employee—wrongful discharge**

There was no abuse of discretion on the part of the trial judge in denying defendant's Rule 59 motion for a new trial in a wrongful discharge case where the plaintiff alleged that she was fired because she refused to follow defendant employer's instructions, and the employer's instructions violated North Carolina statutes. N.C.G.S. § 1A-1, Rule 59.

**Am Jur 2d, New Trial §§ 1 et seq.**

Judge MARTIN (Mark D.) concurring.

**ROBERTS v. FIRST-CITIZENS BANK AND TRUST CO.**

[124 N.C. App. 713 (1996)]

Appeal by defendant from judgment entered 5 November 1993 and order entered 2 August 1995 by Judge Coy E. Brewer, Jr. in Wake County Superior Court. Heard in the Court of Appeals 11 September 1996.

*Kennedy, Kennedy, Kennedy and Kennedy, L.L.P., by Harold L. Kennedy, III, Harvey L. Kennedy, Annie Brown Kennedy and Lauren Michelle Collins, for plaintiff-appellee.*

*Ward and Smith, P.A., by William Joseph Austin, Jr. and Anne D. Edwards, for defendant-appellant.*

LEWIS, Judge.

The issue before us is whether plaintiff was wrongfully discharged from her employment with defendant. A jury determined that she was and awarded her $300,000 in compensatory damages and $1,000,000 in punitive damages. Defendant moved for judgment notwithstanding the verdict ("JNOV") and alternatively, for a new trial. Both motions were denied. Defendant appeals from the final judgment and from the order denying its motions.

We first note defendant's violation of N.C.R. App. P. 26(g). This rule requires papers filed with this Court to be double-spaced and printed in 11 point type. N.C.R. App. P. 26(g) (1996). In *Lewis v. Craven Regional Medical Center*, 122 N.C. App. 143, 468 S.E.2d 269 (1996), this Court explicitly set out the requirements of this rule. The Court stated, "A brief presented in eleven point type will contain no more than three lines of double-spaced text in a single, vertical inch, or twenty-seven (27) lines of double-spaced text on a properly formatted 8.5 by 11 inch page." *Lewis*, 122 N.C. App. at 147, 468 S.E.2d at 273. Additionally, the Court explained that documents should have ten characters per inch and no more than 65 characters per line. *Id.*

[1] Defendant's brief contains 30 lines of type on each page and approximately 72 characters per line. This is a clear violation of Rule 26. Additionally, since the text of defendant's brief extends to the bottom of the thirty-fifth page, this violation enabled defendant to gain the equivalent of several extra pages of text in violation of N.C.R. App. P. 28. Consequently, we could dismiss defendant's appeal, *Miller v. Miller, see* 92 N.C. App. 351, 353, 374 S.E.2d 467, 468 (1988), or could choose not to consider its brief, *see Lewis*, 122 N.C. App. at 147, 468 S.E.2d at 273. However, since the brief was filed two months

prior to our decision in *Lewis*, we choose not to impose either of these sanctions. The rule, nevertheless, was in effect and clear, and therefore, in our discretion under N.C.R. App. P. 2, we tax the cost of printing defendant's brief to defendant's attorneys.

At trial, plaintiff testified that she began working for defendant First-Citizens Bank and Trust Company ("First-Citizens") at their Sparta office in 1974. In 1988, she was promoted to the position of commercial loan officer. Just before and subsequent to her promotion, Ms. Roberts received favorable performance reviews from two different supervisors. In 1989, Gary Fulbright became the city executive at the Sparta office and plaintiff's supervisor.

During the summer of 1990, after an internal audit at First-Citizens, concern arose about a loan taken out by James Church, a local farmer whose family was a longtime customer of First-Citizens. The $4,500.00 loan was secured by a $10,000.00 certificate of deposit ("CD") owned by Viola Church, James' mother. The CD also acted as security for a loan to Harold Church, James' brother. James' loan had been renewed every six months for approximately ten years. The auditors suggested breaking James' loan into 24 monthly payments or requiring it to be paid off when it became due in November 1990.

In August 1990, an interest payment was due on James Church's loan. Mr. Fulbright asked Ms. Roberts to call Mr. Church to remind him about this payment. Mr. Church explained that he was in the middle of harvesting his tobacco and would be in to pay as soon as possible. Mr. Fulbright told Ms. Roberts that if Mr. Church did not have the money to pay off his loan when he came in, she was to cash out the CD immediately. Ms. Roberts testified that she told Mr. Fulbright she could not do that without providing notice and reminded him that such action would leave Harold Church's loan unsecured. Ms. Roberts later spoke with Lucy Smith, a commercial loan administrator at First-Citizens' headquarters in Raleigh. Ms. Smith agreed that the CD could not be cashed out in the manner Mr. Fulbright requested.

On or around 9 September 1990, James Church came into the bank and made his interest payment. He assured Ms. Roberts that he would pay the entire loan when it became due in November. Ms. Roberts did not demand payment of the entire loan at that time, nor did she cash out the CD. Upon learning that Ms. Roberts did not follow his instructions, Mr. Fulbright became hostile and angry to her. On 18 September 1990, Mr. Fulbright gave Ms. Roberts a written rep-

ROBERTS v. FIRST-CITIZENS BANK AND TRUST CO.

[124 N.C. App. 713 (1996)]

rimand for failing to obey his orders regarding the Church loan. Ms. Roberts and several First-Citizens' employees testified that thereafter, Mr. Fulbright was disrespectful of Ms. Roberts and harassed her. In November 1990, Ms. Roberts received her second reprimand from Mr. Fulbright, in which he threatened to terminate her employment. She testified that the allegations in the reprimand were all false. The next month, Mr. Fulbright gave her a "below expected level" evaluation, her first during her employment with First-Citizens.

In March 1991, plaintiff's job was terminated, allegedly due to decreased loan volume. She was told that the bank was experiencing a state-wide layoff of loan officers. Plaintiff was offered a Teller I job, the starting position at the bank, but she declined. Prior to leaving the bank, plaintiff learned that loan volume had not decreased as she had been told; it had actually increased over the past year.

[2] Defendant first assigns error to the trial court's denial of its motions for a directed verdict and JNOV. Our standard for reviewing the trial court's ruling on a directed verdict is the same as that for JNOV. *Poore v. Swan Quarter Farms*, 94 N.C. App. 530, 532, 380 S.E.2d 577, 578, *modified on other grounds*, 95 N.C. App. 449, 382 S.E.2d 835 (1989), *disc. review denied*, 326 N.C. 50, 389 S.E.2d 93 (1990).

> A motion for a directed verdict or a JNOV must be granted if the evidence when taken in the light most favorable to the non-movant is insufficient as a matter of law to support a verdict in favor of the non-movant. The evidence is sufficient to withstand either motion if there is more than a scintilla of evidence supporting each element of the non-movant's case.

*Id.* at 532-33, 380 S.E.2d at 578 (citations omitted).

Defendant argues that plaintiff's allegations cannot, as a matter of law, constitute a public policy exception to the employment-at-will doctrine. Plaintiff argues that because she was fired for her refusal to act in violation of N.C. Gen. Stat. section 25-9-505(2), a provision of the North Carolina Uniform Commercial Code ("UCC"), the public policy exception applies.

We first address defendant's contention that the terms of the UCC do not apply because it was entitled to set-off the value of the CD against the debt in default. The common law right of set-off allows banks, as debtors of their general depositors, to set-off against the deposits any matured debts the depositors owe them. *State ex rel*

*Eure v. Lawrence*, 93 N.C. App. 446, 449, 378 S.E.2d 207, 208 (1989). However, this right to set-off may be waived. *See id.* at 450-451, 378 S.E. 2d at 209-10 (recognizing the possibility of waiver but not finding waiver under the facts of that case).

In the present case, we hold that First-Citizens waived any right of set-off it may have had in regard to Mrs. Church's CD. In the assignment agreement, First-Citizens, through its agent, acknowledged the assignment of the CD as collateral for Mr. Church's loan and agreed that it had "no claim or interest in or right of offset against said account(s)." Accordingly, there is no right of set-off and the terms of the UCC apply.

Defendant argues that, even if the UCC applies, the trial court nevertheless erred in ruling that G.S. 25-9-505(2) is relevant to the facts of this case and requires First-Citizens to provide notice to Mrs. Church prior to cashing in her CD. First-Citizens argues instead that N.C. Gen. Stat. section 25-9-502 alone applies and allows for collection without any notice to the debtor.

G.S. 25-9-502 allows a secured party "to notify . . . the obligor on an instrument to make payment to him" in the event of default. G.S. § 25-9-502(1) (1995). Since a CD is an instrument, *see* N.C. Gen. Stat. § 25-3-104(j) (1995), the terms of G.S. 25-9-502 are clearly applicable to this case. Upon default, First-Citizens undoubtedly had the right to notify the issuer of the CD to pay to First-Citizens the amount of the CD. However, the question before us is whether First-Citizens was also required under statutory authority to notify the debtor of the default and its intention to cash in the CD. G.S. 25-9-502 is silent on the issue of notice to the debtor in such instances. This appears to be a case of first impression in North Carolina.

Plaintiff argues that G.S. 25-9-505(2) applies and requires notice to the debtor. We note that under the UCC, Mrs. Church, as owner of the CD, is considered a "debtor" in any provision dealing with the collateral. *See* N.C. Gen. Stat. § 25-9-105(d) (1995). G.S 25-9-505 provides in relevant part:

> In any other case involving consumer goods *or any other collateral* a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection.

**ROBERTS v. FIRST-CITIZENS BANK AND TRUST CO.**

[124 N.C. App. 713 (1996)]

G.S. § 25-9-505(2) (1995). The phrase "any other collateral" clearly contemplates that this provision is potentially applicable to all types of collateral, even instruments. The key determination to be made is what the General Assembly meant by "retain," a term not defined in the Chapter.

"It is a basic rule of statutory construction that where a statute contains no definition of words used therein, the words of the statute are to be given their natural and ordinary meaning." *Southminster, Inc. v. Justus*, 119 N.C. App. 669, 673, 459 S.E.2d 793, 796 (1995). "Retain" is defined as "[t]o continue to hold, have, use, recognize, etc., and to keep." Black's Law Dictionary 1316 (1990).

Based on this definition, we agree with defendant that a secured party who has cashed in an instrument has not retained it as contemplated by G.S. 25-9-505. Defendant did not intend to simply keep or hold the CD. It intended to cash it in, since an instrument has no value aside from the right of payment it represents. We hold that G.S. 25-9-505(2) does not apply where the collateral involved is an instrument which the secured party intends to cash in. However, we make no judgment about situations where the secured party intends to continue to hold a CD or similar instrument in order to gain interest on it.

Although the trial court incorrectly relied upon G.S. 25-9-505, its conclusion that notice was required is nonetheless correct since notice is mandated by G.S. 25-9-504, which states in part:

A secured party after default may sell, lease or *otherwise dispose of* any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. . . . Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of . . . the time after which any private sale *or other intended disposition* is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

G.S. § 25-9-504(1),(3) (1995). The definition of "dispose of" is not in the Chapter. However, it has been defined as "to transfer into new hands or to the control of someone else: relinquish." Webster's Third New International Dictionary 654 (1968). In our view, this definition certainly encompasses cashing in a CD. Furthermore, the present

case does not fit the exceptions where notice is not required. A CD is not perishable, nor does it threaten to speedily decline in value. A CD is also not customarily sold on a recognized market. *See Smith v. Mark Twain Nat. Bank*, 805 F.2d 278, 289 (8th Cir. 1986). Therefore, First-Citizens was required by statute to provide notice prior to cashing in Mrs. Church's CD.

In summary, because G.S. 25-9-502 is silent as to notice to the debtor, cashing in a CD is a disposal under G.S. 25-9-504 and we are to give effect to both statutes if possible, *see Campos v. Flaherty*, 93 N.C. App. 219, 222, 377 S.E.2d 282, 283, *disc. review denied*, 324 N.C. 577, 381 S.E.2d 772 (1989), we hold that notice is required under G.S. 25-9-504(3) to debtors who provide instruments as collateral before the secured party collects under those instruments upon default. However, our holding is very narrow. We do not address whether other forms of collateral also subject to G.S. 25-9-502 are covered by G.S. 25-9-504 as well.

Our holding is also supported by the general policies inherent in the UCC. Interpreting the UCC to allow secured parties to cash in instruments without debtor notification would thwart one of the basic principles present throughout the UCC: the exercise of good faith in commercial transactions. *See* N.C. Gen. Stat. § 25-1-203 (1995). " 'Good faith' means honesty in fact in the conduct or transaction concerned." N.C. Gen. Stat. § 25-1-201(19) (1995). Honesty is defined as "fairness and straightforwardness of conduct: integrity." Websters Third New International Dictionary 1086 (1968). These principles are evident in the requirements that a secured party give notice to the debtor before selling collateral, *see* G.S. § 25-9-504, and before retaining it, *see* G.S. § 25-9-505, in satisfaction of a debt. Defendant's argument that notice is not required under the UCC when the collateral is an instrument is at odds with the UCC's commitment to fairness and good faith. The debtors in such instances would be deprived of the opportunity to protect their rights.

Notice enables the debtor to exercise his rights under N.C. Gen. Stat. section 25-9-506 to redeem the collateral. G.S. 25-9-506 reads:

> At any time before the secured party has disposed of collateral . . . or before the obligation has been discharged under G.S. 25-9-505(2) the debtor . . . may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations . . . .

G.S. 25-9-506 (1995).

A debtor who secures a debt with an instrument should have the same opportunity to redeem that collateral as any debtor who pledges another type of collateral. This is especially true in cases like the one at hand where the instrument belongs to someone else and secures another's obligation. Mrs. Church would probably not know default had occurred. The CD, if cashed before its maturation date, would incur a loss of interest and a substantial penalty which the owner might well avoid if notified of default.

[3] We hold that under G.S 25-9-504(3), upon default, notice to the debtor is required before payment on an instrument is demanded by the secured party as provided by G.S. 25-9-502. We next determine whether plaintiff's allegations are sufficient to constitute a public policy exception to the employment-at-will doctrine.

"Ordinarily, an employee without a definite term of employment is an employee-at-will and may be discharged for any reason." *Vereen v. Holden*, 121 N.C. App. 779, 783, 468 S.E.2d 471, 474 (1996). However, even an employee-at-will cannot be terminated for " 'an unlawful reason or purpose that contravenes public policy.' " *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989) (quoting *Sides v. Duke University*, 74 N.C. App. 331, 342, 328 S.E.2d 818, 826, *disc. review denied*, 314 N.C. 331, 333 S.E.2d 490 (1985)). Our Supreme Court has stated, "at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992).

The public policy exception to the employment-at-will doctrine is a "narrow exception." *Williams v. Hillhaven Corp.*, 91 N.C. App. 35, 39, 370 S.E.2d 423, 425 (1988). However, appellate courts of this State have found a claim for wrongful termination when an employee alleges that he or she was fired due to political affiliation, *Vereen*, 121 N.C. App. at 784, 468 S.E.2d at 474-75, refuses to violate the Department of Transportation's regulations restricting truck drivers' driving time, *Coman*, 325 N.C. at 175, 381 S.E.2d at 447, refuses to testify untruthfully or incompletely in a court action, *Sides*, 74 N.C. App. at 343, 328 S.E.2d at 826- 27, and testifies at an Employment Security Act proceeding. *Williams*, 91 N.C. App. at 41-42, 370 S.E.2d at 426.

Turning to the present allegations, we find they encompass precisely the type of behavior by employers which is prohibited in the above cases. G.S. 25-9-504 requires notice to be given before a

secured party disposes of collateral to satisfy a defaulted obligation, unless the debtor has renounced this right. G.S. § 25-9-504(3). There is nothing in the record which shows that the Church's relinquished their right to notice. G.S. 25-9-506 allows the debtor to redeem the collateral at any time prior to the time that the collateral is disposed of by tendering his or her obligation in full.

Reading these two provisions together, it is clear that this State's public policy favors allowing debtors to redeem their property pledged as collateral, if possible, in order to protect their interest. North Carolina public policy therefore requires, in instances such as this one, that debtors be given notice and an opportunity to fulfill their obligation prior to the secured parties' disposition of their collateral.

In the present case, if Mr. Fulbright's order had been obeyed, Mrs. Church would have been deprived of the opportunity to redeem her collateral and our expressed public policy would have been violated. Therefore, defendant's argument that plaintiff's allegations cannot, as a matter of law, constitute a public policy exception to the employment-at-will doctrine must fail.

Additionally, viewing the evidence in a light most favorable to plaintiff, we cannot rule that it is insufficient as a matter of law to support a verdict in her favor. Plaintiff presented evidence that she was fired solely due to her refusal to cash out Mrs. Church's CD without notice to either Mr. or Mrs. Church. This termination would surely be for a "purpose that contravenes public policy," because Mrs. Church would have been deprived of any opportunity to redeem her collateral.

Defendant argues that Mr. Fulbright never affirmatively instructed Ms. Roberts to break the law, i.e. not to give notice, so the public policy exception cannot apply. We see no merit in this argument. Ms. Roberts testified that Mr. Fulbright ordered her to cash out the CD "immediately." The word "immediately" precludes the possibility of proper notice. See G.S. § 25-9-504, North Carolina Comment (explaining that the notice required is "notice sufficient to enable the persons entitled thereto to . . . protect their interests.") Although Mr. Fulbright may not have explicitly ordered Ms. Roberts to cash out the CD without notice, in effect, his order to do so immediately was an affirmative instruction to violate the statutory notice requirement. Accordingly, the trial court properly denied defendant's motions for directed verdict and JNOV.

**[4]** Finally, defendant contends that the trial court erred in refusing to grant a new trial. The standard of review of a ruling on a motion for a new trial pursuant to Rule 59 is whether the trial court abused its discretion in granting or denying the motion. *Corwin v. Dickey*, 91 N.C. App. 725, 729, 373 S.E.2d 149, 151 (1988), *disc. review denied*, 324 N.C. 112, 377 S.E.2d 231 (1989). Our review of the court's decision "is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington v. Bynum and Cogdell v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). After thorough review of the arguments and the record, we find no manifest abuse of discretion on the part of the trial judge in denying defendant's motion for a new trial.

Accordingly, we find no error in the judgment and orders of the superior court and assess the cost of printing defendant's brief to counsel for the defendant.

No error.

Judge JOHNSON concurs.

Judge MARTIN, MARK D. concurs with separate opinion.

Judge Johnson participated in this opinion prior to 1 December 1996, the effective date of his retirement.

Judge MARTIN, Mark D., concurring.

I write separately to emphasize, as properly recognized by the majority, that First Citizens, like any depositary institution, possesses a common law right to setoff against a deposit any matured debts owed by a depositor. *State ex rel. Eure v. Lawrence*, 93 N.C. App. 446, 449, 378 S.E.2d 207, 208-209 (1989). The adoption of the Uniform Commercial Code in North Carolina does not abrogate the common law right of setoff. N.C. Gen. Stat. § 25-9-104(i) (1995) (Article 9 does not supersede "any right of setoff"). Nonetheless, as the majority concludes First Citizens *waived* its right of setoff in the present case, I concur in the judgment.