THE LYNNWOOD FOUNDATION, Plaintiff v. NORTH CAROLINA DEPARTMENT OF REVENUE, Defendant

No. COA07-945

(Filed 20 May 2008)

### 1. Taxes— sales and use—refund—charitable organization

Summary judgment was correctly entered for plaintiff in its action seeking a refund of sales and use taxes where defendant contented that plaintiff did not qualify as a charitable organization within the statutory meaning. There are three types of charitable organizations; defendant focuses on the first (relief or aid of a charitable class), but plaintiff falls within the third type of organization (dispensing public good or benevolence).

### 2. Taxes— sales and use—refund—charitable organization not operating at profit

A plaintiff seeking a refund of sales and use taxes as a charitable corporation was not operating at a profit, as defendant contended, when all of the categories of its operations were examined.

### 3. Taxes— sales and use—refund—charitable organization— operation of historical landmark

A charitable organization was entitled to a refund of sales and use taxes, despite defendant's contention that plaintiff did not use its historical property for charitable purposes. Plaintiff sought to recover the taxes it paid on products and services used for carrying out its charitable work; moreover, defendant's contention that plaintiff operates a luxury hotel is without merit because the room rates are necessary to support plaintiff's charitable work and are in keeping with the sites's status as an historical landmark.

Appeal by defendant from an order entered 11 May 2007 by Judge Karl Adkins in Mecklenburg County Superior Court. Heard in the Court of Appeals 6 February 2008.

*Robinson, Bradshaw & Hinson, P.A., by John R. Wester and Thomas Holderness, for plaintiff-appellee.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Gregory P. Roney, for defendant-appellant.*

JACKSON, Judge.

The North Carolina Department of Revenue ("DOR") appeals the denial of its motion for summary judgment and the granting of the motion for summary judgment filed by The Lynnwood Foundation ("plaintiff"). For the reasons stated below, we affirm.

Plaintiff was incorporated in 1996 as a charitable corporation within the meaning of North Carolina General Statutes, section 55A-1-40(4). Its stated purposes were to preserve and restore the White Oaks Mansion—also known as Duke Mansion—and its special historic and architectural features, and to promote an appreciation for such historic and architectural features.

The corporation was to operate exclusively for charitable and educational purposes. It was not formed for pecuniary profit or financial gain. No part of its earnings could be distributed to or inure to the benefit of any of its officers, directors, or any private person, except as reasonable compensation for services rendered.

In 1997, DOR determined that plaintiff was entitled to a refund of a portion of sales and use taxes paid. In 1998, as part of its fundraising efforts, plaintiff began operating the mansion as a conference and

lodging facility, operated by Benchmark Hospitality. Benchmark Hospitality then paid the sales and use taxes associated with the operation of the mansion for conference and lodging purposes. In 2001, plaintiff terminated its contract with Benchmark Hospitality and assumed direct management of conferences and lodging. At that time, plaintiff began paying sales and use taxes to DOR. It also began receiving refunds of a portion of the sales and use taxes it paid, due to its status as a charitable organization. Although DOR reexamined plaintiff's status in 2002, it continued to refund taxes for 2002, 2003, and the first half of 2004.

In addition to educating the public about the history of Duke Mansion, plaintiff also operates the Lee Institute, the mission of which is to "engage people, organizations, and communities in well-designed, informed and collaborative processes through education, facilitation, and consultation." The Lee Institute (1) provides training in collaborative leadership for leadership teams or entire organizations, (2) facilitates effective collaborative work among constituencies when facing critical issues, and (3) supplies up-to-date information on current regional data and concerns. Additionally, in cooperation with the North Carolina Center for the Advancement of Teaching, it hosts a week-long event at the mansion where the Wachovia Teacher of the Year finalists learn about teacher leadership. It also sponsors the Lee Lecture Series, which presents topics of regional interest twice each year.

However, the flagship program of the Lee Institute is The Charlotte Region Chapter of the American Leadership Forum.[1] Through this program, twenty-five leaders are selected from every sector of the region each year to participate in a year-long intensive leadership development program consisting of monthly seminars and intensive dialogue on collaborative leadership, consensus, conflict management, understanding differences, ethics, and leadership systems. Participants also engage in a five-day wilderness experience, run by North Carolina Outward Bound.

Plaintiff did not change its operations between 2002 and 2004 when DOR determined that plaintiff no longer was entitled to sales and use tax refunds because it was not a charitable organization but a "principally civic" one, not entitled to such refunds. On or about 3

---

1. The American Leadership Forum is a national non-profit organization dedicated to joining and strengthening established leaders in order to serve the public good. It enhances leadership by building on the strengths of diversity and by promoting collaborative problem-solving within and among communities.

August 2006, plaintiff filed an action seeking to recover a refund of a portion of the sales and use taxes it paid for the second half of 2004 and all of 2005, totaling $14,731.83.

On 8 March 2007, plaintiff filed a motion for summary judgment in the action. DOR filed its motion for summary judgment on 13 March 2007. The cross-motions were heard on 5 April 2007. By order entered 11 May 2007, the trial court denied DOR's motion and granted plaintiff's motion. It is from this order that DOR appeals.

This Court reviews an order allowing summary judgment *de novo*, using the same standard as the trial court. *See Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). In deciding a motion for summary judgment, a trial court must consider the evidence in the light most favorable to the non-moving party. *See Summey*, 357 N.C. at 496, 586 S.E.2d at 249. If there is any evidence of a genuine issue of material fact, a motion for summary judgment should be denied. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 471, 597 S.E.2d 674, 694 (2004). In reviewing the evidence at summary judgment, "[a]ll inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Boudreau v. Baughman*, 322 N.C. 331, 343, 368 S.E.2d 849, 858 (1988) (citing *Page v. Sloan*, 281 N.C. 697, 190 S.E.2d 189 (1972)).

[1] The crux of DOR's argument is that plaintiff does not qualify as a charitable organization within the meaning of North Carolina General Statutes, section 105-164.14, and therefore is not entitled to a refund of sales and use taxes paid. We disagree.

North Carolina General Statutes, section 105-164.14(b) provides, *inter alia*, that

> A nonprofit entity included in the following list is allowed a semiannual refund of sales and use taxes paid by it under this Article on direct purchases of tangible personal property and services, other than electricity, telecommunications service, and ancillary service, for use in carrying on the work of the nonprofit entity:

> . . . .

(2) Educational institutions not operated for profit.

(3) Churches, orphanages, and other charitable or religious institutions and organizations not operated for profit.

N.C. Gen. Stat. § 105-164.14(b) (2007). Thus, plaintiff would be entitled to a refund of sales and use taxes it paid if (1) it was a charitable organization; (2) the purchases were of property used in "carrying on the work" of the organization; and (3) it is not operated for a profit. DOR argues that plaintiff does not qualify for a refund because it (1) does not aid a charitable class, (2) does not operate for public use, (3) operates for a profit, and (4) does not use the taxed property for charitable purposes.

Both parties rely on this Court's decision in *Southminster, Inc. v. Justus*, 119 N.C. App. 669, 459 S.E.2d 793 (1995) to define a charitable organization for purposes of applying the statute at issue.

"Generally defined, a charitable institution is an organization or other entity engaged in the relief or aid to a certain class of persons, a corporate body established for public use, or a private institution created and maintained for the purpose of dispensing some public good or benevolence to those who require it."

*Id.* at 674, 459 S.E.2d at 796 (quoting *Darsie v. Duke University*, 48 N.C. App. 20, 24, 268 S.E.2d 554, 556, *disc. rev. denied*, 301 N.C. 400, 273 S.E.2d 445 (1980)). Pursuant to this definition, there are three types of charitable organizations: (1) those that engage in relief or aid to a charitable class; (2) those established for public use; and (3) those created and maintained for the purpose of dispensing public good or benevolence.

DOR focuses primarily on the first type of charitable organization, to the exclusion of the second and third categories. Plaintiff argues that it falls within the second or third type of charitable organization. We agree.

As described above, plaintiff was formed in order to restore and preserve Duke Mansion as an historic site. The mansion is on the National Register of Historic Places.[2] The grounds and common

2. "The National Register of Historic Places is the Nation's official list of cultural resources worthy of preservation. Authorized under the National Historic Preservation Act of 1966, the National Register is part of a national program to coordinate and support public and private efforts to identify, evaluate, and protect our historic and archeological resources. Properties listed in the Register include districts, sites, buildings, structures, and objects that are significant in American history, architecture,

rooms have been restored and are preserved for public viewing, at no charge. In addition, plaintiff hosts special events at the mansion which are open to the public, including an annual Easter egg hunt, Halloween trick-or-treating, and the annual meetings of the Myers Park Homeowner's Association.

> The preservation of historically significant residential and commercial districts protects and promotes the general welfare in distinct yet intricately related ways. It provides a visual, educational medium by which an understanding of our country's historic and cultural heritage may be imparted to present and future generations. That understanding provides in turn a unique and valuable perspective on the social, cultural, and economic mores of past generations of Americans, which remain operative to varying degrees today.

*A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 216, 258 S.E.2d 444, 450 (1979) (citation omitted).

> [S]tructures with special historic, cultural, or architectural significance enhance the quality of life for all. Not only do these buildings and their workmanship represent the lessons of the past and embody precious features of our heritage, they serve as examples of quality for today. Historic conservation is but one aspect of the much larger problem, basically an environmental one, of enhancing—or perhaps developing for the first time—the quality of life for people.

*Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 108, 57 L. Ed. 2d 631, 638-39 (1978) (citations and quotation marks omitted). DOR conceded in a 5 November 2004 internal communication that preservation of historic sites open to the public has been determined to be a "charitable" activity. Therefore, plaintiff falls within the third type of charitable organization and DOR's arguments on this point are without merit.

[2] In support of its argument that plaintiff operates for a profit, DOR points to income and expense reports obtained through discovery. However, DOR focuses only on the figures related to three categories of plaintiff's entire operations: (1) rooms, (2) food and beverage, and (3) conference services. In these three categories—directly associ-

---

archeology, engineering, and culture. The National Register is administered by the National Park Service, which is part of the U.S. Department of the Interior." http://www.nps.gov/history/nr/about.htm.

**LYNNWOOD FOUND. v. N.C. DEP'T OF REVENUE**

[190 N.C. App. 593 (2008)]

ated with plaintiff's conference and lodging activities—"income" exceeded "expenses." DOR's focus on only three categories of income and expenses is self-serving. In addition to engaging in conference and lodging activities, plaintiff operates the Lee Institute, raises funds for its efforts, and expends significant amounts of money to maintain and preserve the property. An examination of all the categories, including the Lee Institute, donations, and preservation, indicates that plaintiff's overall "expenses" exceeded its overall "income." Therefore, DOR's argument on this point is without merit.

**[3]** Finally, DOR argues that plaintiff is not entitled to a refund because it does not use the taxed property for charitable purposes. For the eighteen months from July 2004 through December 2005, plaintiff paid a total of $239,069.03 in sales and use taxes to DOR. Plaintiff seeks to recover only $14,731.83. During the same period, plaintiff expended over $2 million towards preserving the property.

The $14,731.83 plaintiff seeks to recover was sales and use taxes it paid with respect to products and services used to preserve the mansion and operate the Lee Institute, such as office supplies, maintenance and upkeep of the mansion, and equipment rentals and supplies for the Lee Institute. Plaintiff does not seek to recover refunds on items and services provided to overnight guests such as maid service, toiletries, and breakfast. Because plaintiff seeks to recover only the sales and use taxes it paid on items that it used in carrying out its charitable work—preserving Duke Mansion and operating the Lee Institute, DOR's argument is without merit.

We note also that DOR's contention that plaintiff operates a "luxury hotel" is without merit. Although plaintiff's room rates are $169-249 per night, and the Duke Mansion has earned the AAA four-diamond award, the property is marketed as a bed and breakfast, with twenty unique rooms. The room rates are necessary to support plaintiff's charitable work and in keeping with the site's status as an historic landmark. The award evidences plaintiff's efforts in restoring the property and making overnight guests comfortable throughout their stay.

Plaintiff was entitled to judgment as a matter of law because we find there is no genuine issue of material fact as to whether (1) plaintiff is a charitable organization; (2) plaintiff does not operate for a profit; and (3) plaintiff used the purchases for "carrying on the work" of its charitable programs. Therefore, the trial court's granting of summary judgment in plaintiff's favor was without error.

Affirmed.

Judges HUNTER and BRYANT concur.